IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

| | | |
|---|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC., and JANE DOE, individually, and on behalf of JAMIE DOE, | : : : : : | Civil Action No. 1:17-cv-00642 |
| *Plaintiffs*, | : : | |
| v. | : : : | |
| MERCER COUNTY BOARD OF EDUCATION, MERCER COUNTY SCHOOLS, DEBORAH S. AKERS, individually and in her official capacity as superintendent of Mercer County Schools, | : : : : : : : | |
| *Defendants*. | : : : | |

## BRIEF IN SUPPORT OF MOTION FOR LEAVE TO USE PSEUDONYMS AND FOR PROTECTIVE ORDER

Plaintiffs filed this lawsuit using pseudonyms. Jane Doe and Jamie Doe aver—and evidence suggests—that if their identities are disclosed, they will be subject to harm. Plaintiffs request an order permitting the Doe family to proceed using pseudonyms and a protective order to ensure the Doe Plaintiffs' identities are protected throughout this case.

### INTRODUCTION

This lawsuit challenges the constitutionality of Mercer County Schools' elementary and middle school bible classes. Plaintiffs contend that these classes violate the Establishment Clause of the First Amendment to the United States Constitution and Article III, Section 15 of the West

Virginia Constitution. Jamie Doe, a kindergarten student within Mercer County Schools and the student's parent, Jane Doe, seek the multi-faceted relief typically associated with Establishment Clause cases: a declaration that the policy and practice of teaching bible classes in the public schools is unconstitutional, an injunction prohibiting Mercer County Schools from administering or teaching bible classes in the future, and nominal damages.

The unique facts of this case provide a clear basis for Plaintiffs' request that they be permitted to pursue their claims anonymously, through the use of pseudonyms. The highly personal and sensitive nature of the religious matters involved in this case, the potential for retribution against the Doe family, and the young age of the minor Plaintiff weigh heavily in favor of pseudonymous litigation. Moreover, Defendants are government entities and will not be prejudiced by Plaintiffs' use of pseudonyms in this case.

## ARGUMENT

**A. Establishment Clause cases involving public schools implicate privacy concerns that warrant the use of pseudonyms.**

Plaintiffs who bring civil rights cases challenging religious practices in public schools face a unique risk of retribution and harm to children. These cases often involve religious matters that are deeply supported in the community and put the ability of the plaintiff to continue to receive a public education at risk. For these reasons, cases involving religion in public schools often proceed with the plaintiffs utilizing pseudonyms. *See Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290 (2000) (pseudonymous plaintiffs challenging prayers at school athletic events); *Doe v. Stegall*, 653 F.2d 180 (5th Cir. Aug. 1981) (pseudonymous challenge to public school Bible readings); *Doe v. Elmbrook Sch. Dist.*, 687 F.3d 840 (7th Cir. 2012) (en banc) (pseudonymous challenge to holding public school graduations in a church), *cert. denied*, 134 U. S. 2283 (2014); *Doe v. Porter*, 370 F.3d 558 (6th Cir. 2004) (pseudonymous challenge to bible

2

lessons taught in public schools).

Though there is a presumption of openness of judicial proceedings, the Fourth Circuit has held that under appropriate circumstances pseudonyms may be permitted when privacy or confidentiality concerns warrant anonymity. *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). *James* identified five non-exhaustive factors to be considered in deciding whether to allow a party to proceed anonymously:

> [(1)] Whether the justification asserted by the requesting party is merely to avoid the annoyance or criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; [(2)] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; [(3)] the ages of the persons whose privacy interests are sought to be protected; [(4)] whether the action is against a governmental or private party; and, [(5)] relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Jacobson,* 6 F.3d at 238.

Applying the *James* factors, district courts in the Fourth Circuit have granted the use of pseudonyms when necessary to protect plaintiffs' anonymity. *See, e.g. Nelson v. Green*, No. 3:06cv00070, 2007 U.S. Dist. LEXIS (M.D.N.C. May 20, 2004) (granting use of pseudonyms in a challenge by students of University's orientation program as violating the Establishment Clause and the Free Exercise Clause). This Honorable Court should reach the same conclusion here because each of these factors weighs in Plaintiffs' favor.

**(1) Religious beliefs are a highly personal and sensitive matter.**

Religious beliefs are "quintessentially private" matters. *Doe v. Pittsylvania County, Va.*, 844 F.Supp.2d 724, 729 (W.D. Va. Feb. 3, 2012) (applying *James*) (citing *Doe v. Stegall*, 653 F.2d at 186 (5th Cir. 1981)). The "preservation and transmission of religious beliefs and worship

3

is a responsibility and a choice committed to the private sphere." *Lee v. Weisman*, 505 U.S. 577, 589 (1992).

Disclosure of Plaintiffs' identities will cause these sensitive and highly personal matters to be exposed publicly. The Doe family's own religious views are not germane to the merits of the Establishment Clause issues in this case, and yet, unless granted anonymity, the nature of the controversy in this community will expose Plaintiffs' privately held non-religious beliefs. Even if Plaintiffs do not have to "directly state their religious affiliations, or lack thereof," Plaintiffs will nonetheless have to explain their injuries to prove standing, which will necessarily "require [them] to reveal [their] 'beliefs concerning the proper interaction between government and religion.'" *Pittsylvania County*, 844 F.Supp.2d at 729 (applying *James*) (quoting *Doe v. Barrow County*, 219 F.R.D. 189, 193 (N.D. Ga. 2003)). In *Barrow County*, "[t]he court recognize[d] that such concerns can implicate privacy matters similar to those associated with actual religious teachings and beliefs." *Id*. at 193. Pseudonym protection will allow Plaintiffs to protect these intrinsically private matters.

**(2) Disclosing Plaintiffs' identities will place them at risk of retaliatory harm.**

The Doe family faces a unique risk inherent in Establishment Clause cases. There is an alarming history of violence and threats of violence against Establishment Clause plaintiffs. For example, after Vashti McCollum brought a suit in 1945 objecting to the practice of allowing public school students to attend religious classes held in public school classrooms (*see Illinois ex rel. McCollum v. Bd. Of Educ.*, 333 U.S. 203 (1948)), her house was vandalized, she received hundreds of pieces of hate mail, and her sons were physically attacked (*see* Robert S. Alley, WITHOUT A PRAYER: RELIGIOUS EXPRESSION IN PUBLIC SCHOOLS 84-89 (1996)).

4

In 1994, Lisa Herdahl brought an action challenging prayer practices in her children's schools. *See Herdahl v. Pontotoc County Sch. Dist.*, 887 F.Supp. 902 (N.D. Miss. 1995). As a result, her children were called "atheists and devil worshipers" by their classmates. Stephanie Saul, *A Lonely Battle in the Bible Belt: A Mother Fights to Halt Prayer at a Miss. School*, Newsday, Mar. 13, 1995, at A8. Other children were threatened with beatings by their parents if they were caught talking to, or playing with, the Herdahl Children. Alley, *supra*, at 177. There were reports that a boycott would be organized against the convenience store where Lisa Herdahl worked. Saul, *supra*, at A08. Herdahl gave up her job "because of threats against her children," Alley at 182, and she received death threats and threats that her home would be firebombed. *Id.* at 186.

Similarly, the son of the plaintiff in *Chandler v. Siegelman*, 203 F.3d 1313 (11th Cir. 2000) (involving a challenge to prayer at school-related events), was "harassed at school almost daily." Jonathan Ringel, *Alabama Claims U.S. Court Order Denies Students' Right to Pray*, FULTON COUNTY DAILY REP., Dec. 4, 1998, at 1. In *Sante Fe*, even though Debbie Mason was not a plaintiff but merely a vocal opponent of the school-prayer policy challenged in the case, she received threatening phone calls and was followed home by persons trying to scare her. Kenny Byrd, *Baptist Family Opposed to Football Prayer Feels Pressure*, BAPTIST STANDARD, June 12, 200. Eventually, her husband and children became unable to find work in the town where they lived. *Id*.

In the case of *Wynne v. Town of Great Falls*, 376 F.3d 929 (4th Cir. 2004), the plaintiff suffered extreme harassment at the hands of her neighbors after she sued to enjoin a town council from opening its meetings with sectarian prayers. Individuals unhappy with the suit broke into

5

the plaintiff's home and beheaded her pet parrot, leaving behind a note reading, "You're next!" *See* Christian Lee Knauss, *A Quiet Light No More*, THE STATE, Sept. 19, 2004, at D1.

Tyler Deveny, the eighteen year-old plaintiff in *Deveny[1] v. Board of Education*, 231 F. Supp. 2d 483 (S.D.W.Va. 2002), endured a personal beating after successfully challenging the invocation planned for his high-school graduation ceremony. *See* Charles Shumaker, *Student Beaten for Prayer Suit*, *He Says*, CHARLESTON GAZETTE & DAILY MAIL, June 19, 2002, at 6D. A group of eight teens, evidently displeased with the outcome, attacked Deveny in a public place, with one saying, "Oh, you hate God," before striking Deveny in the face. *Id*.

In a more recent case over religious iconography in school that was decided in 2012, the publicly identified high school plaintiff was subject to retaliation. Jessica Ahlquist faced "bullying and threats at school, on her way home from school and on-line." *Ahlquist v. City of Cranston ex rel. Strom*, 840 F. Supp. 2d 507, 516 (D.R.I. 2012). After the lawsuit was filed, the plaintiff "was subject to frequent taunting and threats at school, as well as a virtual on-line hate campaign via Facebook." *Id*. After the court ruled in her favor, Ahlquist faced continued harassment. See Aby Goodnough, "Student faces town's wrath in protest against a prayer," N.Y. TIMES, January 26, 2012.

As this history shows, retaliation against Establishment Clause plaintiffs suing government entities in their community—including physical assault, attacks on family, intimidation, public humiliation, proxy violence against pets, and more—is far more common and severe than what a typical plaintiff faces.

In the short time since this case was filed, Jane Doe has already witnessed numerous hateful statements made by others about her personally. The statements are intimidating to the

---

[1] Mr. Deveny's last name was erroneously spelled "Deveney" in the case caption.

6

plaintiff and her child and demonstrate intent by some to push them out of the community or worse. See Exhibit A (Declaration of Jane Doe).

On January 21, 2017, in response to a news story on Facebook, Rachel Duncan posted a statement which instructed Jane Doe to "get a life suck it up and move outta mercer county," explaining "we don't need non believers n this county anyways we got enuff idiots as it is and u just add to the mix…" Decl. of Jane Doe ("Exhibit A") at ¶ 11; Exhibit A1.

On January 20, 2017, in response to a WCHS & WVAH TV post on Facebook, Slone Nicole Tawnya posted, "ridiculous she needs punched in her mouth sorry not sorry." Exhibit A1; Exhibit A at ¶ 12.

On January 21, 2017, in response to a Fox News post on Facebook, David King posted, "…thou shall not suffer a witch to live…(kill it)." Exhibit A3; Exhibit A at ¶ 13.

On January 19, 2017, Sheila D. Long posted on Facebook, "Just got a text:some idiot is filing a federal lawsuit over Mercer county Bible in the school program…we need to find out who this idiot or idiots are and get them a one way ticket to Iran…" Exhibit A4; Exhibit A at ¶ 14.

Based upon these comments—all within the first three days after this lawsuit was filed— and many other similar comments that have been made since, Jane Doe reasonably fears that if her identity were made public, she and her child could face retaliation from the community, which may cause them mental and physical harm. The reasonableness of these fears is revealed by the long history of retaliation in other Establishment Clause cases. Pseudonym protection will provide Plaintiffs with a necessary buffer from the potential retaliatory acts of third-parties.

### (3) The minor Plaintiff's age weighs in favor of anonymity.

The potential harm to children in Establishment Clause cases is great, and thus, courts have frequently allowed minor plaintiffs to proceed using pseudonyms. *See, e.g.*, *Porter*, 370 F.3d at 560-61; *Stegall*, 653 F.2d at 186. In *Stegall*, the Fifth Circuit found "especially persuasive . . . that plaintiffs are children." *Stegall*, 653 F.2d at 186. *Stegall* "view[ed] the youth of these plaintiffs as a significant factor in the matrix of considerations arguing for anonymity." *Id.* The court also noted that the potential harm to minors is especially acute in Establishment Clause cases. *Id.* (holding "[t]he gravity of the danger posed by the threats of retaliation against the Does for filing this lawsuit must also be assessed in light of the special vulnerability of these child-plaintiffs").

Recognizing the vulnerabilities of minors in litigation, Rule 5.2 of the Federal Rules of Civil Procedure requires minors to be identified by their initials, but this measure of protection would be insufficient here. Jamie Doe is under 7 years of age, and because Plaintiffs are drawn from such a small pool of individuals, even the use of initials for the minor plaintiff would make Jamie easily identifiable. By extension, Jane Doe's anonymity is necessary to protect Jamie Doe from being identified. Given the nature of the controversy and the limited number of students attending kindergarten in Mercer County, it is essential that Jamie Doe be afforded the protection of pseudonyms for both Jamie Doe and Jamie's parent.

### (4) This case is brought against government parties.

Courts are more likely to grant a plaintiff permission anonymously when the plaintiff sues a governmental entity and calls governmental action into question. *Pittsylvania County*, 844 F.Supp.2d 724, 730 ("[C]ourts in general are less likely to grant a plaintiff permission to proceed anonymously when the plaintiff sues a private individual than when the action is against a

governmental entity seeking to have a law or regulation declared invalid.") (citations omitted). "Actions against the government do no harm to its reputation, whereas suits filed against private parties may damage their good names and result in economic harm." *Id.* (citing *Southern Methodist University Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979).

Here, the Doe family is suing Mercer County Schools, the Mercer County Board of Education and Superintendent Deborah Akers. The inclusion of Defendant Akers in her official and individual capacity clearly implicates the governmental activity factor because citizens have an interest in ensuring that the people who occupy government offices abide by constitutional requirements. The nature of Plaintiff's claims against governmental entities, challenging governmental actions by those same parties supports pseudonym protection.

**(5)    There is no risk of unfairness to Defendants.**

Finally, allowing Plaintiffs to proceed anonymously will not prejudice Defendants. As government actors, the Defendants' decisions affect thousands of students, parents, and community members. Protestation, anonymous or public, through litigation or through dialogue, is due course for government actors. These protestations, including Plaintiffs' challenges in this case, relate to government action. Plaintiffs' own actions are not the subject of this case. Their credibility or recitation of facts will not decide this case. Rather, as long as Plaintiffs have standing to sue, this case will depend on the resolution of a legal question: Do Defendants' elementary and middle school Bible classes violate the Constitution? Given the issues in this case, Defendants' ability to defend their own actions will not be affected by the identification of Plaintiffs.

Furthermore, as the case progresses, all parties will have full discovery rights and will only be minimally inconvenienced, if at all, by the restrictions imposed by the corresponding Proposed Protective Order. Under the Proposed Protective Order, identifying information of Plaintiffs will actually be made available so that Defendants can confirm the existence of plaintiffs with standing in this case.

**B. A Protective Order is necessary to protect Plaintiffs from identification.**

In addition to the protections afforded to Plaintiffs by the use of pseudonyms, in order to ensure that Plaintiffs' are truly able to proceed anonymously, Plaintiffs also request the Court to grant the enclosed Protective Order. The Protective Order prohibits Defendants, Defendants counsel, court personnel, and any other person from disclosing Plaintiffs' identities. Furthermore, the Protective Order restricts the parties' ability to file any documents containing Plaintiffs' identities, requiring that any such documents be filed under seal. The procedure and protocol set forth in the Protective Order will permit Defendants to conduct necessary due diligence and discovery while maintaining the anonymity of Plaintiffs.

For the foregoing reasons, plaintiffs respectfully request that their Motion for Leave to Use Pseudonyms and For Protective Order be granted.

Respectfully submitted,

/s/ *Marcus B. Schneider, Esquire*___
Marcus B. Schneider, Esquire
W.V. ID. No. 12814
STEELE SCHNEIDER
428 Forbes Avenue, Suite 900
Pittsburgh, PA 15219
(412) 235-7682
(412) 235-7693/facsimile
mschneider@steeleschneider.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on February 8, 2017, the foregoing **BRIEF IN SUPPORT OF MOTION FOR LEAVE TO PROCEED USING PSEUDONYMS AND FOR PROTECTIVE ORDER** was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic case filing system and constitutes service of this filing under Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure.  Parties may access this filing through the Court's ECF system.

                                              */s/ Marcus B. Schneider, Esquire*
                                              Marcus B. Schneider, Esquire