IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

FREEDOM FROM RELIGION
FOUNDATION, INC. et al.,

    Plaintiffs,

    v.                    CIVIL ACTION NO. 1:17-00642

MERCER COUNTY BOARD OF
EDUCATION et al.,

    Defendants.


AMENDED MEMORANDUM OPINION AND ORDER

    This civil action questions the constitutionality of a longstanding Bible in the Schools ("BITS") program administered in many of the elementary and middle schools throughout Mercer County, West Virginia. Plaintiffs, Freedom From Religion Foundation, Inc., Jane Doe and her child Jamie Doe, and Elizabeth Deal and her child Jessica Roe, allege the BITS program violates the Establishment Clause and request an injunction prohibiting defendants from administering BITS in the future. Elizabeth Deal and Jessica Roe also seek nominal damages.

    For the reasons that follow, defendants' motion to dismiss, ECF No. 25, is **GRANTED** without prejudice.

## I. BACKGROUND

### A. Bible in the Schools (BITS)

Over 70 years ago, elementary and middle school students began participating in a public school Bible curriculum in Mercer County, West Virginia. See First Amended Complaint ("FAC") ¶ 19. In 1986, the Mercer County Board of Education assumed responsibility for adopting and administering the BITS curriculum. See FAC ¶ 22. A nonprofit organization, Bluefield Bible Study Fund, Inc., financed the program's expenses. Id. at ¶ 24. Defendant, Mercer County Board of Education created, approved, and oversees the BITS curriculum, employs specific Bible teachers, and reviews the curriculum every five years. Id. at ¶¶ 90-94. Defendant, Mercer County Schools, provides written lessons to BITS teachers. Id. at ¶ 25. Over her 25-year tenure, Deborah Akers, Superintendent of Mercer County Schools, allegedly implemented all Mercer County School policies and programs, including BITS. Id. at ¶¶ 97-98, 106. Defendant, Rebecca Peery, principal of Memorial Primary School was allegedly responsible for school policies and instruction at Memorial Primary School, located in Mercer County (where the plaintiff Jessica Roe previously attended), including approving BITS lessons pursuant to Mercer County Schools' Policy I-45. See id. at ¶ 99. Mercer County School Policy I-45 directed

teachers to develop BITS lesson plans and submit them to their school principals for review.  Id. at ¶¶ 101, 106.

Of 21 Mercer County elementary,[1] intermediate, and middle schools,[2] 19 administer BITS.  Compare Doc 25-2, with http://www.mercerbits.org/aboutus.htm.  BITS classes are taught weekly for 30 minutes in elementary schools and 45 minutes in middle schools by Bible teachers that are required to possess "a degree in Bible."  See FAC ¶¶ 53, 54, 62.

**B. Plaintiffs**

The First Amended Complaint, filed on March 28, 2017, included five (5) plaintiffs: two parents, their two children,

---

[1] Defendants contend that "four [Mercer County] elementary schools do not offer such classes."  ECF No. 26 at 3 (emphasis in original).  First, defendants fail to include Bluefield Intermediate School as an elementary school even though it is listed as one in its Exhibit.  ECF. No. 25-2.  Moreover, two "elementary" schools included in the 19 schools only enroll pre-kindergarten students and do not offer BITS (Cumberland Heights ELC and Silver Springs ELC).  See id.  In sum, only one Mercer County elementary school, Athens Elementary School, did not administer BITS between first and fifth grade.  Compare Doc 25-2, with Bible in the Schools: About Us, http://www.mercerbits.org/aboutus.htm (last visited Sept 21, 2017).

[2] According to the BITS website, only one of five Mercer County middle schools, Montcalm Middle School, does not administer BITS from 7th to 8th Grade.  Thus, the BITS curriculum was taught in all sixth grade classrooms of Mercer County public schools. Compare Mercer County Public Schools, Middle and Secondary Schools, http://boe.merc.k12.wv.us/?q=node/6 (last visited Sept. 21, 2017), with Bible in the Schools: About Us, http://www.mercerbits.org/aboutus.htm (last visited Sept. 21, 2017).

and Freedom from Religion Foundation ("FFRF"). Plaintiff parents, "Jane Doe" and Elizabeth Deal sued individually and on behalf of their children "Jamie Doe" and "Jessica Roe," respectively. See FAC ¶¶ 8-17. Jane Doe is the only individual plaintiff who is a member of FFRF, a national group that "defends the constitutional principle of separation between state and church and educates the public about the views of non-theists." FAC ¶ 8.

On the date of suit, January 18, 2017, Jamie Doe, daughter of Jane Doe, attended a Mercer County school as a kindergarten student where BITS was offered to first-grade students. See FAC ¶ 11, 29. Jane Doe alleged her intention to enroll her daughter in the same school the following year. Id. Jane Doe brought the instant lawsuit to escape "two untenable choices . . . either [Jamie Doe will] be forced to attend bible indoctrination classes against the wishes and conscience of Jane Doe, or Jamie Doe will be the only child or one of only a few children who do not participate [in BITS]. . . [and thus] subject[] Jamie to the risk of ostracism from peers and even school staff." FAC ¶ 33.

From 2012-2016 (kindergarten to third-grade), Jessica Roe, daughter of Elizabeth Deal, attended Memorial Primary School in Mercer County, but her mother declined to allow her to participate in the program. FAC ¶¶ 34-38. Instead, Jessica Roe allegedly was sent to different school locations – back of the

classroom and other classrooms – to abstain from BITS.  FAC ¶¶
39-44.  Roe was allegedly "harassed by other students" and "felt
excluded" because she did not participate in BITS.  FAC ¶¶ 45,
46.  In August 2016, for her fourth-grade year and before the
lawsuit was filed, Jessica Roe transferred to a "neighboring
school" that did not sponsor BITS.  FAC at ¶ 48.  According to
Elizabeth Deal, the BITS program was a "major reason" for
Jessica's transfer.  Id. at 48.

## C. Suspension of BITS

On May 23, 2017, the Mercer County Board of Education voted
to suspend the teaching of BITS for "at least a year."  See ECF
No. 30-1.  Defendants represented that this suspension ensures
that "the Mercer County Board of Education undertakes a thorough
review of and modification to the [BITS] curriculum."
Defendants' Reply Brief at 6 (ECF No. 30).  On April 11, 2017,
the Mercer County Board of Education terminated the employment
of all BITS teachers.  See ECF No. 30-1 at ¶ 4.  Finally, at the
hearing on the motion to dismiss held on June 19, 2017, counsel
for defendants assured the court during oral argument that the
BITS curriculum of which plaintiffs are complaining does not
exist and will not come back.

Nevertheless, statements of defendants in the newspapers
indicate defendants' desire to resurrect the BITS program after
a thorough review.  See ECF No. 30.  The defendant, Deborah

Akers reportedly[3] emphasized "Mercer County Schools is continuing its efforts to keep the Bible in the Schools program," although a timetable for a new BITS program has not been established. See ECF No. 30-3.

**D. Defendants' Motion to Dismiss**

Defendants, Mercer County Board of Education, Mercer County Schools, and Deborah Akers[4] filed their motion to dismiss and accompanying memorandum on April 19, 2017, requesting a complete dismissal of plaintiffs' claims on four grounds. ECF No. 25 First, defendants allege that plaintiffs do not have standing to bring this lawsuit. Id. Second, they argue the Amended Complaint does not state a cognizable legal claim, because it asks the court to institute an absolute ban on Bible classes in Mercer County public schools, which defendants contend is not permitted. Id. Third, the Amended Complaint fails to state a proper claim against Deborah Akers. Id. Fourth and finally, according to defendants, plaintiffs fail to adequately plead violations of 42 U.S.C § 1983 against Mercer County Board of Education and Mercer County Schools. Id. Plaintiffs responded

---

[3] Deborah Akers' statements were printed in the Bluefield Telegraph and entered into the record by defendants. See ECF No. 30-3.

[4] Defendant, Rebecca Peery, was not included as a party to this motion to dismiss, but instead filed a motion to dismiss for lack of service pursuant to Fed. R. Civ. P. 4(m). See ECF No. 39.

in opposition on May 10, 2017.  ECF No. 28.  Defendants

submitted their reply brief on May 24, 2017, declaring for the

first time that the BITS program had been suspended.  See ECF

No. 30.  As a result,[5] plaintiffs submitted a sur-reply brief on

June 9, 2017.  ECF No. 33.  After defendants confirmed the

suspension of BITS at oral argument on June 19, 2017, the court

requested additional briefing on the issue of ripeness, and both

parties filed memoranda.  ECF Nos. 43 and 44.

## II.  DISCUSSION

### A. Establishment Clause

Establishment Clause jurisprudence colors the court's

considerations regarding whether this case is ripe for review.

Supreme Court jurisprudence has by no means established an

absolute bar to the Bible being taught and studied in the public

school system.  In the seminal case of School of Abington Tp.,

Pa. v. Schempp, the Supreme Court stated:

> Nothing we have said here indicates that such study of
> the Bible or of religion, when presented objectively
> as part of a secular program of education, may not be
> effected consistently with the First Amendment.

374 U.S. 203, 225 (1963).  In evaluating whether religious

programs in public schools violate the Establishment Clause,

courts employ the three-pronged Lemon test, which requires that

(1) the activity have a secular purpose, (2) the activity has a

---

[5] With the courts permission.  See ECF No. 32.

principal or primary effect, which neither advances nor inhibits religion, and (3) the activity does not foster excessive entanglement with religion. See Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971); see also Edwards v. Aguillard, 482 U.S. 578, 584 (1987); Schemmp, 374 U.S. at 226 ("In the relationship between man and religion, the State is firmly committed to a position of neutrality").

Lower federal courts have consistently employed the Lemon test to both allow and enjoin Bible curriculum in the public school system. See, e.g., Gibson v. Lee County School Bd., 1 F. Supp. 2d 1426 (M.D. Fl. 1998) (denying a preliminary injunction as to the School Board's Old Testament curriculum and granting a preliminary injunction as to its New Testament curriculum); Crockett v. Sorenson, 568 F. Supp. 1422, 1431 (W.D. Va. 1983) (holding public school Bible program violated the Establishment Clause); Wiley v. Franklin, 497 F. Supp. 390, 396 (E.D. Tenn 1980) (refusing to enjoin Bible study courses taught by the City of Chattanooga, but enjoining Bible study courses taught in Hamilton County elementary schools).

In considering whether a Bible curriculum passes muster under the Establishment Claus, courts are tasked with a context-specific and fact-intensive analysis. Staley v. Harris Cty., Tex., 485 F.3d 305, 307 (5th Cir. 2007) (en banc) ("[W]e emphasize[] that Establishment Clause analysis is context-

specific and fact-intensive."); Schempp, 374 U.S. 203, 225 (1963) (holding school-sponsored prayer unconstitutional but reaffirming the principle that the "Bible is worthy of study for its literary and historic qualities" and may be "presented objectively as a secular program of education"); see also Wiley, 497 F. Supp. at 392 ("the ultimate test of the constitutionality of any course of instruction founded upon the Bible must depend upon classroom performance."); Gibson, 1 F. Supp. 2d at 1433 (same).

Finally, courts "are required to be deferential to a state's articulation of a secular purpose, [and] it is required that the statement of such purpose be sincere and not a sham." Aguillard, 482 U.S. at 587.

## B. Standard of Review

Defendants move to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(1). A motion to dismiss an action under Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction over the action. See Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). A Rule 12(b)(1) motion may attack subject matter jurisdiction in two ways. First, a Rule 12(b)(1) motion may attack the complaint on its face by contending that the complaint "fails to allege facts upon which subject matter jurisdiction can be based." Campbell v. United States, Civil Action No. 2:09-0503, 2010 WL 696766, at *7

(S.D.W. Va. Feb. 24, 2010) (Copenhaver, J.) (citing _Adams_, 697
F.2d at 1219).  Second, the defendant can assert that the
allegations in the complaint establishing jurisdiction are not
true.  _Id._
A motion questioning subject matter jurisdiction must be
considered before other challenges because the court must find
it has jurisdiction before determining the validity of any
claims brought before it.  _Evans v. B.F. Perkins Co._, 166 F.3d
642, 647 (4th Cir. 1999).  "It is the duty of the Court to see
to it that its jurisdiction is not exceeded; and this duty, when
necessary, the Court should perform on its own motion."  _Spence
v. Saunders_, 792 F. Supp. 480, 482 (S.D.W. Va. 1992) (Faber, J.)
(citation omitted).

In a motion to dismiss pursuant to Rule 12(b)(1), the
plaintiff bears the burden of showing that federal jurisdiction
is appropriate when challenged by the defendant.  _McNutt v. Gen._
_Motors Acceptance Corp._, 298 U.S. 178, 189 (1936).

**C. Standing**

The federal court system is limited to adjudicating actual
cases and controversies.  U.S. Const. art. III, § 2.  As a
result, standing "focuses on the party seeking to get his
complaint before a federal court and not on the issues he wishes
to have adjudicated."  _Flast v. Cohen_, 392 U.S. 83, 99 (1968).
"Generally, challenges to standing are addressed under Rule

12(b)(1) for lack of subject matter jurisdiction." Payne v. Chapel Hill North Props., LLC, 947 F. Supp. 2d 567, 572 (M.D.N.C. 2013) (citing CGM, LLC v. Bell South Telecomms., Inc., 664 F.3d 46, 52 (4th Cir. 2011)).

The establish standing, each plaintiff must demonstrate three elements: (1) an injury in fact that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) a causal connection between the injury and defendant's actions, and (3) that a favorable decision is likely to redress the injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (plurality opinion) ("Lujan").

When analyzing standing, the court "assume[s] that on the merits the plaintiffs would be successful in their claims." Cooksey v. Futrell, 721 F.3d 226, 239 (4th Cir. 2013) (quoting City of Waukesha v. EPA, 320 F.3d 228, 235 (D.C. Cir. 2003)). With this framework in mind, courts assess whether each plaintiff has standing when the lawsuit is filed. Pashby v. Delia, 709 F.3d 307, 316 (4th Cir. 2013) (emphasis added) (citing Lujan, 504 U.S. 555, 571 n.5 (1992)).

**1. Injury in Fact**

To establish injury in fact, each plaintiff must show "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (quotation marks and

citation omitted).  In cases alleging Establishment Clause

violations, a plaintiff must have "personal contact with the

alleged establishment of religion."  Suhre v. Haywood County,

131 F.3d 1083, 1086 (4th Cir. 1997).  "[M]ere abstract objection

to unconstitutional conduct is not sufficient to confer

standing."  Id.

Direct harm is not limited to "physical injury or pecuniary

loss," and "noneconomic or intangible injury may suffice to make

an Establishment Clause claim justiciable."  Id.  Thus,

"[f]eelings of marginalization and exclusion are cognizable

forms of injury . . . because one of the core objectives of

modern Establishment Clause jurisprudence has been to prevent

the State from sending a message to non-adherents of a

particular religion 'that they are outsiders, not full members

of the political community.'"  Moss v. Spartanburg Cty. Sch.

Dist. Seven, 683 F.3d 599, 607 (4th Cir. 2012) (quoting McCreary

County v. Am. Civil Liberties Union of Ky., 545 U.S. 844, 860

(2005)).

Additionally, a plaintiff is not required to take

affirmative steps to avoid the challenged religious exercise.

Instead, standing exists when plaintiffs "were subjected to

unwelcome religious exercises or were forced to assume special

burdens to avoid them."  Valley Forge Christian Coll. v. Ams.

United for Separation of Church & State, Inc., 454 U.S. 464, 487
n.22 (1982).

Even with this abstract definition of direct harm, courts
"must guard against efforts to use this principle to derive
standing from the bare fact of disagreement with government
policy, even passionate disagreement premised on Establishment
Clause principles.  Such disagreement, taken alone, is not
sufficient to prove spiritual injury."  Moss, 683 F.3d at 605
(citing Valley Forge, 454 U.S. at 486-87 & n.22).  In doing so,
the injury must remain "concrete in both a qualitative and
temporal sense . . . as opposed to merely abstract."  Whitmore
v. Arkansas, 495 U.S. 149, 155 (1990) (citations and quotations
omitted).

### 2. Traceability and Redressability

The second and third prongs require the court to determine
whether a plaintiff's injuries are traceable to defendant's
conduct and whether a favorable decision would likely redress
such injuries.  The traceability prong is satisfied when it is
"likely that the injury was caused by the conduct complained of
and not by the independent action of some third party not before
the court."  Friends of the Earth, Inc. v. Gaston Copper
Recycling Corp., 204 F.3d 149, 154 (4th Cir. 2000) (citing
Lujan, 504 U.S. at 561).

Additionally, redressability insists that plaintiffs demonstrate that the remedy they seek will likely cure the injury in fact of which they complain.  Doe v. Virginia Dep't of State Police, 713 F.3d 745, 755 (4th Cir. 2013) (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 181 (2000) ("Laidlaw")).

**3. Analysis**

**a. Elizabeth Deal and Jessica Roe**

Jessica Roe attended a Mercer County school for three years where BITS was a part of the curriculum.  See FAC ¶¶ 34-47.  Elizabeth Deal alleges that other students and faculty harassed her daughter due to her failure to participate in BITS classes.  See FAC ¶ 45.  Before the 2016-17 school year, Elizabeth Deal transferred her daughter to a neighboring school for her fourth-grade year.  FAC ¶ 40.

While Deal contends that BITS was a "major reason" for her child's removal to a neighboring school, FAC ¶ 48, the Amended Complaint includes no contention that the removal of BITS would lead toward the re-enrollment of Jessica Roe in Memorial Primary School or any other Mercer County public school.

Each plaintiff "must demonstrate standing separately for each form of relief sought."  Freedom from Religion Foundation v. New Kensington Arnold Sch. Dist., 832 F.3d 469, 482 (3d Cir. 2016) (Smith, J. concurring dubitante) ("New

Kensington")(quoting Laidlaw, 528 U.S. at 185). The court's review of Elizabeth Deal's and Jessica Roe's claims for relief illustrate that standing does not exist for their claims for prospective relief.

### i. Injunctive and declaratory relief

To have standing to seek injunctive relief, a plaintiff must demonstrate a likelihood of repeated injury or future harm to the plaintiff in the absence of the relief requested. See City of Los Angeles v. Lyons, 461 U.S. 95, 103 (1982) (describing the standing requirement for injunctive relief to require that the "threat to the plaintiffs" of future injury be "sufficiently real and immediate"); see also Deshawn E. by Charlotte E. v. Safir, 156 F.3d 340, 344 (2d Cir. 1998) ("A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future.").

The injunctive and declaratory relief requested by Elizabeth Deal and Jessica Roe is available only if it can redress her grievances. O'Shea v. Littleton, 414 U.S. 488, 495 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy if unaccompanied by any continuing, present adverse effects."). In the stark absence of a contention that Roe intends to return to Memorial Primary School, Elizabeth Deal and Jessica Roe are not entitled to

prospective relief because they do not have a concrete interest in the resolution of those claims.

Additionally, this case is distinguishable from New Kensington, 832 F.3d 469, a case where the United States Court of Appeals for the Third Circuit decided that a plaintiff parent's decision to send her child to another school did not deprive the parent of standing to seek injunctive relief regarding the removal of a Ten Commandments monument at Valley High School. See id. at 481. In that case, the court specifically noted that if the Ten Commandments monument was removed from Valley High School, the parent "avow[ed]" that she would permit her child to enroll at the school. Id. at 474.[6]

There is no allegation in the Amended Complaint that Jessica Roe would return to school in Mercer County if the Bible in the Schools program was enjoined. For this reason, the court has no reason to believe that the prospective relief sought by Deal and Roe would redress their grievances. This is especially true where, as here, the Amended Complaint does not allege that the Bible in the Schools program was the only reason for sending Roe to a school outside Mercer County. See id. at 476 ("In assessing standing, our primary project is to separate those

---

[6] The court also mentioned that the student had expressed an interest in attending classes at another facility on the high school campus that would put her in contact with the monument. See id. at 481 n.13.

with a true stake in the controversy from those asserting 'the generalized interest of all citizens in constitutional governance.'") (quoting Valley Forge, 454 U.S. at 483).

### ii. Nominal Damages

Elizabeth Deal and Jessica Roe also seek an award of nominal damages. While the Supreme Court and Fourth Circuit have not issued an explicit directive as to whether nominal damages may alone suffice to confer standing, the Supreme Court has recognized that plaintiffs must "personally [ ] benefit in a tangible way from the court's intervention," consistent with the federal court's directive of limited jurisdiction. Warth v. Seldin, 422 U.S. 490, 508 (1975). After reviewing applicable case law from other circuits, the court does not believe that the nominal damages claim of Deal and Roe is sufficient to confer standing.

This case is similar to Morrison v. Board of Education of Boyd County, 21 F.3d 602, 610 (6th Cir. 2008), cert. denied, 555 U.S. 1171. In that case, before the 2004-05 school year, Boyd County High School instituted a written policy prohibiting its students from making stigmatizing or insulting comments about another student's sexual orientation. Id. at 605. In February 2005, Timothy Morrison, a high school student, sued the school board, alleging the policy chilled his religious beliefs as a Christian in violation of numerous constitutional provisions.

Id. at 606-07.  In August 2005, the school board revised its
policy in that "anti-homosexual speech would not be prohibited
unless it was sufficiently severe or pervasive" such that it
created a hostile environment.  Id. at 607.  Morrison continued
to seek nominal damages because his speech was chilled the
previous school year.  The court dismissed Morrison's claim
stating, "nominal damages . . . would have no effect on the
parties' legal rights."  Id. at 611.  Additionally, the Sixth
Circuit Court of Appeals expressed the trivial nature of
engaging in an advisory opinion for the sake of nominal damages
as follows: "Allowing [this case] to proceed to determine the
constitutionality of an abandoned policy--in the hope of
awarding the plaintiff a single dollar vindicates no interest
and trivializes the important business of the federal courts."
Id. at 611.  This court agrees.

    The court also finds the concurrence of Judge Smith in New
Kensington 832 F.3d at 482 (concurring dubitante), persuasive.
In assessing whether nominal damages alone may confer standing,
Judge Smith wrote, "I am doubtful that a claim for nominal
damages alone suffices to create standing to seek backward-
looking relief."  Id. at 482.  As another judge put it, "[w]here
. . . the challenged past conduct did not give rise to a
compensable injury and there is no realistic possibility of
recurrence, nominal damages have no more legal effect than would

injunctive or declaratory relief in the same case." Utah Animal Rights Coalition v. Salt Lake City Corp., 371 F.3d 1248 (2004) (McConnell, J. concurring)[7].[8]

Plaintiffs contend that this court should instead look to Covenant Media of South Carolina, LLC v. City of North Charleston, 493 F.3d 421 (4th Cir. 2007). However, plaintiffs' focus on Covenant Media is misplaced because that case does not squarely address the issue before this court: whether a claim for nominal damages, standing alone, is sufficient to confer Article III standing. Although the Covenant Media court suggested that a claim for nominal damages might provide standing,[9] in that case the plaintiff was seeking both compensatory and nominal damages. See id. at 429 n.4.

---

[7] Interestingly, Judge McConnell wrote both the majority and concurring opinion in this case in an effort to remain consistent with Tenth Circuit precedent while urging en banc or Supreme Court review of this issue. See id. at 1263.

[8] Judge McConnell's concurrence provides an extensive history of the purpose of nominal damages claims. In the past, "[l]awyers might have asserted a claim for nominal damages to get the issue before the court in the days before declaratory judgements were recognized." Id. at 1265 (quoting 13A Wright, Miller & Cooper, Federal Practice and Procedure § 3533.3, at 266 (2d ed. 1984)). Now however, the Declaratory Judgment Act has enlarged the available "range of remedies in the federal courts . . . ." Id. (quoting Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950)).

[9] See id. at 429 ("Because Covenant alleges a personal injury . . . that is redressable by nominal damages, we conclude that the district court erred in determining Covenant lacked standing.").

Thus, the nominal damages claim will "not remedy the injury suffered [and] cannot bootstrap [Deal and Roe] into federal court," undermining standing's redressability requirement. <u>New Kensington</u>, 832 F.3d at 483 (quoting <u>Steel Co.</u>, 523 U.S. at 107 (1998)). Since nominal damages will not redress any past injury caused by BITS, Elizabeth Deal's and Jessica Roe's claim for nominal damages is dismissed for lack of standing.

### b. Doe Plaintiffs and FFRF

Defendants assert that the chain of possibilities in which Jane Doe and her kindergarten child allege injury is a "mere speculative chain of possibilities," which fails to suffice for the direct harm necessary for standing. <u>See</u> ECF No. 30 at 8. Defendants declare that the actual suspension of BITS further confirms the speculative nature of Doe's child attending and being harmed by BITS classes. <u>See id.</u>

The facts at issue, compared with defendants reliance upon <u>Clapper v. Amnesty Int'l USA</u>, 568 U.S. 398 (2013), are night and day. In <u>Clapper</u>, plaintiffs – attorneys and human rights, labor, legal, and media organizations – challenged the constitutionality of the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1881a, which authorized the electronic government surveillance of non-U.S. persons outside the United States.[10]

_____

[10] It is important to note the rigors of the Supreme Court's standing analysis when "review[ing] the actions of political

The court held plaintiff's fear rested upon a "highly attenuated chain of possibilities"[11] that the respondents had been harmed by the government's potential monitoring of foreign citizens located abroad, which respondents may have had communications. In stark contrast, for over 75 years, public schools in Mercer County have offered Bible classes to its students and, since 1986, the Bible in the Schools program has been administered by the Mercer County Board of Education. See FAC ¶¶ 18, 22.

The longstanding and unabated nature of the BITS program, coupled with the fact that Jamie Doe already attended a Mercer

_____

branches in the fields of intelligence gathering and foreign affairs." Id. at 409 (collecting cases); e.g. United States v. Richardson, 418 U.S. 166, 167-169 (1974); Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 209-211 (1974); Laird v. Tatum, 408 U.S. 1, 11-16 (1972).

[11] In full, the speculative nature of respondent's claims required the following:

> (1) the Government will decide to target the communications of non-U.S. persons with whom they communicate; (2) in doing so, the Government will choose to invoke its authority under § 1881a rather than utilizing another method of surveillance; (3) the Article III judges who serve on the Foreign Intelligence Surveillance Court will conclude that the Government's proposed surveillance procedures satisfy § 1881a's many safeguards and are consistent with the Fourth Amendment; (4) the Government will succeed in intercepting the communications of respondents' contacts; and (5) respondents will be parties to the particular communications that the Government intercepts.

Id. at 410.

21

County school that sponsored BITS and would herself encounter the program in seven months, is sufficiently temporally concrete to convey Article III standing.  See Lee v. Weisman, 505 U.S. 577, 584 (1992) (holding that recent middle school graduate who later enrolled at Classical High School had standing to challenge the school's practice of inviting clergy to give invocations and benedictions at high school graduations because plaintiff was "enrolled as a student at Classical High School in Providence and from the record it appears likely, if not certain, that an invocation and benediction will be conducted at her high school graduation.");[12] Babbitt v. United Farm Workers Nat. Union, 442 U.S. 289, 298 (1979) ("A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement."); New Kensington, 832 F.3d at 473-74, 480-81 (recognizing standing of a parent to seek the removal of a Ten Commandments monument at a high school which parent's child would not attend for approximately two years).

Moreover, the court's conclusion that the Does' injury was sufficiently concrete and particularized to confer standing is not undermined by defendants' voluntary suspension of BITS.  A

_____

[12] Indeed, the Weismans actually filed their lawsuit approximately a month after the student's middle school graduation, and therefore, four years before she would graduate from high school.  See id. at 584.

plaintiff's standing is tested at the time the complaint is filed. See Laidlaw, 528 U.S. at 189 (2000) ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).") (citation omitted); Lujan, 504 U.S. at 570 n.5 ("[S]tanding is to be determined as of the commencement of suit."); cf. Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830 (1989) ("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed."). The BITS program had been taught since 1986 without interruption, and it was only suspended after the lawsuit was filed.[13]

To the extent that defendants argue that the Does lack standing because Jamie Doe could attend another elementary school in Mercer County where Bible in the Schools was not offered or simply remain at the same school but "opt out" of the program, that argument is without merit.

In evaluating standing, the Supreme Court has never required plaintiffs to take affirmative steps to avoid contact with challenged displays or religious exercises. The student plaintiffs in Schempp had the option to leave the classroom during the Bible reading and prayer they protested. These plaintiffs chose not to assume this special burden, yet the Supreme Court readily found that they had standing to challenge the practice.

---

[13] Defendants do not argue that plaintiffs' claims are moot because of the temporary suspension of the Bible in the Schools program.

<u>Suhre v. Haywood County</u>, 131 F.3d 1083, 1088 (4th Cir.
1997)("[N]either Supreme Court precedent nor Article III imposes
such a change-in-behavior requirement."); <u>Schempp</u>, 374 U.S. at
224-25 ("Nor are these required exercises mitigated by the fact
that individual students may absent themselves upon parental
request."); <u>see also</u> <u>Mellen v. Bunting</u>, 327 F.3d 1083, 1088 (4th
Cir. 2003) ("VMI cannot avoid Establishment Clause problems by
simply asserting that a cadet's attendance at supper and his or
her participation in the supper prayer are voluntary.  In the
words of the Supreme Court, the government may no more use
social pressure to enforce orthodoxy than it may use more direct
means.") (internal citations and quotations omitted).

The court's conclusion that Jane Doe and her child have
standing also leads the court to conclude that FFRF also has
standing on behalf of its member, Jane Doe.  <u>See</u> <u>Hunt v.
Washington State Apple Advertising Comm'n</u>, 432 U.S. 333, 343
(1977); <u>see also</u> <u>Moss v. Spartanburg County School Dist. Seven</u>,
683 F.3d 599, 606 (4th Cir. 2012) ("For an organization to have
standing, it must establish that at least one identifiable
member has suffered or would suffer harm from the defendant's
conduct . . . . Because Tillett is a member of the Foundation
and the Foundation has relied exclusively on her alleged injury
to support its standing, its claim to standing rise or falls

with Tillett.") (internal citations and quotation marks omitted). Thus, because Jane Doe has standing, so too does FRFF.

## D. Ripeness

"The doctrine of ripeness prevents judicial consideration of issues until a controversy is presented in 'clean-cut and concrete form.'" Miller v. Brown, 462 F.3d 312, 318–19 (4th Cir. 2006) (quoting Rescue Army v. Mun. Court of L.A., 331 U.S. 549, 584 (1947)). Therefore, ripeness concerns the appropriate timing of judicial intervention. "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Texas v. United States, 523 U.S. 296, 300 (1998) (quoting 13A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3532, p. 112 (1984)).

If the appropriate timing is not present in an action, a claim should be dismissed if the plaintiff has not suffered any injury and future impact remains "wholly speculative." Gasner v. Bd. of Supervisors, 103 F.3d 351, 361 (4th Cir. 1996); Abbott Labs. v. Gardner, 387 U.S. 136, 148–49 (1967). "A hypothetical threat is not enough." United Pub. Workers of Am. (C.I.O.) v. Mitchell, 330 U.S. 75, 90 (1947). Simply and appropriately stated by the D.C. Circuit, the ripeness doctrine "ensures that Article III courts make decisions only when they have to, and

then, only once." Am. Petroleum Inst. v. E.P.A., 683 F.3d 382, 387 (D.C. Cir. 2012).

"Quite different from standing, which a party always possesses once it is established, 'ripeness can be affected by events occurring after the case is filed' and thus may be gained or lost throughout a case." Eternal Word Television Network, Inc. v. Sebelius, 935 F. Supp. 2d 1196, 1220 (N.D. Ala. 2013)( quoting Yacht Club on the Intracoastal Condo. Ass'n v. Lexington Ins. Co., 509 Fed.Appx. 919, 922 (11th Cir. 2013)); see also Blanchette v. Conn. Gen. Ins. Corps., 419 U.S. 102, 140 (1974) ("[R]ipeness is peculiarly a question of timing, it is the situation now rather than the situation at [an earlier time] that must govern.").

Abbott Labs. v. Gardner created a two-prong test to determine whether an issue "is sufficiently definite and clear to permit sound review by this court." 387 U.S. at 148-149. These prongs require the court to balance "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." Id. at 149.

## 1. Fitness for Judicial Review

The fitness analysis focuses upon whether the issues sought to be adjudicated remain contingent on future events. Id. at 151. Courts remain hesitant to factually analyze a question which would result in the issuance of an advisory opinion,

instead shielding itself behind the supposition that "[i]f we do not decide the [case] now, we may never need to." Am. Petroleum Inst., 683 F.3d at 387; National Park Hospitality Ass'n v. Department of the Interior, 538 U.S. 803, 804 (2003) (dismissing the case as not ripe when "further factual development would significantly advance the court's ability to deal with the issues presented and therefore adjudication should await a concrete dispute . . .")(brackets omitted).

The Fifth Circuit's en banc decision in Staley v. Harris County, Texas is particularly instructive. 485 F.3d 305, 307 (5th Cir. 2007), cert. denied, 552 U.S. 1038. In that case, plaintiff sought to enjoin Harris County, Texas from displaying a Bible inside a monument located on county courthouse grounds. Id. at 307. The district court ordered the Bible removed and a panel of the Fifth Circuit affirmed. Id. at 307. However, two months before oral argument was heard en banc, the court learned that the county courthouse had been closed for renovations and that the monument would be placed in storage for at least two years. Id. Doing so made the case both no longer ripe for review (and also moot) because:

> [A]ny dispute over a probable redisplay of the Mosher monument is not ripe because there are no facts before us to determine whether such a redisplay might violate the Establishment Clause. Indeed, no decision has been made regarding any aspect of the future display. In the absence of this evidence, we are

> unable to conduct the fact-intensive and context-
> specific analysis required . . .

Id. at 309.

The same uncertainties exist in this case because the court is unable to evaluate the content of future BITS classes because they do not exist. As noted supra, a public school Bible class does not establish an automatic violation of the Establishment Clause. Instead, the court must engage in a case-by-case adjudication of whether the content of the class is consistent with Lemon v. Kurtzman, 403 U.S. 602. Moreover, the standards set forth by numerous district courts guide public schools as to how a Bible curriculum may comply with the Establishment Clause. See supra.

As noted earlier, the Bible in the Schools program of which plaintiffs' complain is not currently offered nor will it be offered in the future. Furthermore, should a Bible in the Schools curriculum reemerge, the court has no information before it to determine the content of such a class. With "no facts before us to determine whether the [BITS program] might violate the Establishment Clause," Staley v. Harris County, Tex., 485 F.3d at 309, the court is left unable to engage in the context-dependent inquiry of a future BITS curriculum. Therefore, until the Bible in the Schools curriculum that Jamie Doe will actually encounter "is presented in clean-cut and concrete form," Rescue

Army, 331 U.S. at 584, this action is not ripe for judicial review.

### 2. Hardship to the Parties

The hardship prong of our ripeness analysis is "measured by the immediacy of the threat and the burden imposed on the petitioner who would be compelled to act under threat of enforcement of the challenged law." Charter Fed. Sav. Bank v. Office of Thrift Supervision, 976 F.2d 203, 208 (4th Cir. 1992) (citing Abbott Labs., 387 U.S. at 149). "To outweigh the[ ] institutional interests in the deferral of review, any hardship caused by that deferral must be immediate and significant. Considerations of hardship that might result from delaying review will rarely overcome the fitness problems inherent in attempts to review tentative positions." Am. Petroleum Inst., 683 F.3d at 388 (internal quotations omitted). In doing so, the court reviews the harmful effects of withholding consideration of the past BITS program. Abbott Labs., 387 U.S. at 149 (1967).

The court is mindful of the ambiguity and future harm which faces plaintiffs concerning whether the BITS program will be resurrected in future years. Indeed the school has stated its intention to resurrect the BITS program. See ECF No. 30-3.

However, defendants represented to the court in writing and during oral argument that it has discontinued the present BITS program and that the BITS curriculum of which plaintiffs

complain does not exist and will not come back. The court takes defendants' representations[14] as a binding commitment that the past BITS program no longer exists and that BITS has been altogether suspended for at least one year. See ECF No. 30-1; ECF No. 30 at 6.

Additionally, the remedies available to the court do not include an absolute ban on a future BITS curriculum. See Schempp, 374 U.S. at 225. Indeed, whether or not this court were to undergo an (albeit incomplete) factual analysis of the past BITS program, defendants might remain capable of developing, adopting, and teaching a new BITS curriculum in conformity with Establishment Clause jurisprudence.

As a result, the clouded future of BITS classes in Mercer County would hang over the heads of the Does regardless of the court's substantive review. Nevertheless, as the Supreme Court reminded plaintiffs in Texas v. United States, if BITS returns and it is clear the new BITS program violates constitutional law, this district is more than capable of granting a preliminary injunction. 523 U.S. at 302.

---

[14] The court does not blindly trust defendants' representations, but also relies upon the fact that the BITS teachers have been terminated from their employment by the Mercer County Board of Education, see ECF 30-1 at ¶ 4, putting the court at ease that a new BITS program is incapable of returning without putting plaintiffs and the court on notice.

This court finds "it too speculative whether the problem [the Does] present[] will ever need solving; we find the legal issues [the Does] raise[] not fit for our consideration, and the hardship to [the Does] of biding [their] time insubstantial." Id.

Based on the Abbott Laboratories factors, this court has determined that Does' and FRFF's claims are not ripe for review.

### III. CONCLUSION

The court **GRANTS** the defendants' Motion to Dismiss the Amended Complaint **without prejudice** as it relates to all defendants.[15]   ECF No. 25.   The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record.

IT IS SO ORDERED this 14th day of November, 2017.

ENTER:

*David A. Faber*

David A. Faber
Senior United States District Judge

---

[15] While defendant, Rebecca Peery, did not join defendants' motion to dismiss, see ECF No. 25, plaintiffs' claims are also not justiciable as they relate to Ms. Peery.   Therefore, plaintiffs' claims against Ms. Peery are also dismissed.