**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-2429**

ELIZABETH DEAL; JESSICA ROE,

                Plaintiffs – Appellants,

     and

FREEDOM FROM RELIGION FOUNDATION, INC.; JANE DOE; JAMIE DOE,

                Plaintiffs,

     v.

MERCER COUNTY BOARD OF EDUCATION; MERCER COUNTY
SCHOOLS; DEBORAH S. AKERS, in her individual capacity,

                Defendants – Appellees.

Appeal from the United States District Court for the Southern District of West Virginia, at
Bluefield.  David A. Faber, Senior District Judge.  (1:17-cv-00642)

Argued:  November 1, 2018                Decided:  December 17, 2018

Before MOTZ, DUNCAN, and QUATTLEBAUM, Circuit Judges.

Reversed and remanded by published opinion.  Judge Motz wrote the opinion, in which
Judge Duncan and Judge Quattlebaum joined.

**ARGUED:**  Marcus Schneider, STEEL SCHNEIDER, Pittsburgh, Pennsylvania, for
Appellants.  David Richard Dorey, Washington, D.C.; Hannah Eliades Dunham,

O'MELVENY & MYERS LLP, Washington, D.C, for Appellees.  **ON BRIEF:**  Kermit J. Moore, BREWSTER, MORHOUS & CAMERON, Bluefield, West Virginia; Gregory F. Jacob, O'MELVENY & MYERS LLP, Washington, D.C.; Hiram S. Sasser, III, FIRST LIBERTY INSTITUTE, Plano, Texas, for Appellees.

————————

DIANA GRIBBON MOTZ, Circuit Judge:

For the better part of a century, Mercer County, West Virginia has offered weekly in-school Bible lessons to public elementary and middle school students through its "Bible in the Schools" program.  Believing that the program violated the Establishment Clause, appellants Elizabeth Deal and her daughter, Jessica, filed this action against the Mercer County Board of Education, Mercer County Schools, Mercer County Schools Superintendent Deborah S. Akers, and Memorial Primary School Principal Rebecca Peery (collectively, the "County").  The district court dismissed their complaint, reasoning that appellants lacked standing to sue and that their claims were not ripe.  They now appeal. For the reasons that follow, we reverse and remand for further proceedings consistent with this opinion.

## I.

The following facts are taken from appellants' amended complaint, which we must "accept as true" for the purpose of this appeal.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The "Bible in the Schools" ("BITS") program is a Bible instruction course that has been taught in Mercer County Schools for nearly 80 years.  The program offers 30 minutes of weekly Bible instruction for elementary school students and 45 minutes for middle school students "as a part of the regular school day."  Participation is ostensibly voluntary, since parents must return a permission slip to allow their children to attend.  In practice, nearly all students participate.

Since 1986, the County itself has administered the BITS program and designed its curriculum for use by specially employed BITS teachers.  The curriculum includes lessons covering the story of Moses, the Crucifixion, and the Ten Commandments. Notwithstanding the County's administrative role, the program is privately funded by Bluefield Bible Study Fund, Inc., a 501(c)(3) organization.

Appellants Elizabeth Deal and her daughter, Jessica, live in Mercer County.  When Jessica entered first grade at Memorial Primary School, her mother received a permission slip to allow Jessica to participate in BITS.  Deal, who identifies as agnostic, sought to teach her daughter about "multiple religions" to allow Jessica to "make her own religious choices."  Because Deal believed that the school's weekly Bible lessons were incompatible with these goals, she withheld her permission.  When the Bible program began later that year, a school official separated Jessica from her classmates and placed her "in a coatroom area" in the back of the classroom during the Bible class.  After Deal protested to the principal, school officials relocated Jessica, usually to another classroom, the library, or a computer lab.  The County never offered any alternative instruction to Jessica during the BITS program.

Jessica alleges that she faced harassment from other students because she did not participate in BITS.  For example, one student told Jessica that she and her mother were going to hell.  Their experiences left appellants feeling marginalized and excluded in the community, ultimately prompting Deal to enroll Jessica in a neighboring school district for the fourth grade, where she has remained since.  Deal alleges that "[t]he [BITS] program and the treatment [Jessica] received . . . were a major reason for her removal."

Shortly after relocating Jessica, appellants filed this action alleging that the BITS program violates the Establishment Clause and seeking injunctive relief and nominal damages.  The County moved to dismiss for lack of standing and failure to state a claim. During the briefing period, the County notified the district court that the Board of Education had suspended BITS for at least a year to "review" the program's curriculum. Counsel for the County later suggested at oral argument before the district court that the suspended version of the program would not return, but news reports, which Mercer County itself submitted, quoted Superintendent Akers as saying that the County was "fighting" to retain BITS.  After oral argument and supplemental briefing, the district court granted the County's motion to dismiss, reasoning that appellants lacked standing to sue and that, as a result of the program's suspension, their case was no longer ripe.[1]  This appeal followed.

## II.

The County first maintains that, because Jessica no longer attends a Mercer County school and has not vowed to return, appellants lack standing to seek injunctive relief. Unlike questions of mootness and ripeness, the standing inquiry asks whether a plaintiff had the requisite stake in the outcome of a case "at the outset of the litigation." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000).  "When standing

---

[1] The original complaint included plaintiffs Jamie Doe, a student still enrolled in the Mercer County School system, and Jane Doe, Jamie's mother.  The district court also dismissed those claims, and those plaintiffs did not appeal.

is challenged on the pleadings, we accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 181–82 (4th Cir. 2013) (internal quotation marks omitted).

We review a district court's dismissal for lack of standing de novo. *Ohio Valley Envtl. Coal., Inc. v. Pruitt*, 893 F.3d 225, 229 (4th Cir. 2018). To satisfy the "irreducible constitutional minimum of standing[,] . . . [a] plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (internal quotation marks omitted); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Because appellants' asserted injuries are clearly traceable to BITS, only the first and third elements of standing — injury in fact and redressability — are at issue here.

### A.

The County first contends that appellants have not adequately pled an injury in fact. To establish injury in fact, appellants must show that they "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560).

"[T]he concept of injury for standing purposes is particularly elusive in Establishment Clause cases." *Suhre v. Haywood Cty.*, 131 F.3d 1083, 1085 (4th Cir. 1997) (quoting *Murray v. City of Austin*, 947 F.2d 147, 151 (5th Cir. 1991)). This is so because Establishment Clause injuries are often "spiritual and value-laden, rather than tangible and

6

economic." *Moss v. Spartanburg Cty. Sch. Dist. Seven*, 683 F.3d 599, 605 (4th Cir. 2012) (internal quotation marks omitted).  As such, an Establishment Clause injury "may be shown in various ways." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 129 (2011).  But no matter how rare or unique the injury, a plaintiff still must carry the burden of demonstrating each element of standing.  *See Suhre*, 131 F.3d at 1085–86 (explaining "there is of course no 'sliding scale of standing'" (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 484 (1982))).

Appellants allege three separate injuries, one already sustained and two ongoing. First, they assert that while Jessica attended school in Mercer County, they suffered direct, unwelcome contact with the BITS program.  *See id.* at 1086 (finding injury based on "unwelcome direct contact with a religious display that appears to be endorsed by the state").  Second, they allege that they continue to avoid the BITS program by sending Jessica to a neighboring school district, expending resources to do so.  *See Valley Forge*, 454 U.S. at 486 n.22 (construing *Abington Sch. Dist. v. Schempp*, 374 U.S. 203 (1963), as establishing that standing exists where "impressionable schoolchildren [are] subjected to unwelcome religious exercises *or [are] forced to assume special burdens to avoid them*" (emphasis added)).  Finally, appellants assert that they suffer from ongoing feelings of marginalization and exclusion.  *See Moss*, 683 F.3d at 607; *see also Int'l Refugee Assistance Project v. Trump*, 883 F.3d 233, 258–59 (4th Cir. 2018), *vacated on other grounds*, 138 S. Ct. 2710 (2018) (collecting cases).

The County concedes, as it must, that each of these allegations state cognizable injuries.  But notwithstanding the ongoing nature of two of appellants' asserted injuries,

the County argues that these harms are not sufficiently *imminent* to permit a court to grant injunctive relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983) (outlining the imminence requirement for plaintiffs seeking injunctive relief after past injuries); *Lebron v. Rumsfeld*, 670 F.3d 540, 560–62 (4th Cir. 2012) (same). This framing of the issue fundamentally misapprehends appellants' claims. Appellants seek relief not just for past injuries or from some speculative future injury, which would implicate the imminence requirement. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Rather, appellants also claim to suffer from two actual, ongoing injuries: (1) near-daily avoidance of contact with an alleged state-sponsored religious exercise,[2] and (2) enduring feelings of marginalization and exclusion resulting therefrom.

Moreover, to the extent that the County asks us to import the imminence requirement into cases involving ongoing injuries, its argument makes little sense. The Supreme Court has always described and treated the two concepts — actual, ongoing injury vs. imminent injury — as disjunctive. *See, e.g.*, *Lujan*, 504 U.S. at 560 (requiring that an injury in fact be "actual *or* imminent" (emphasis added)).

Our own application of these principles illustrates the point. In *Kenny v. Wilson*, for instance, we considered a vagueness challenge to two South Carolina statutes assertedly

---

[2] Avoiding direct contact with a religious display is a particularly serious injury under our caselaw. In *Suhre*, the government argued that direct contact could not establish an injury unless the challenger had "actually changed his behavior in response to the display." 131 F.3d at 1087. Rejecting this view, we explained that such avoidance of contact would constitute "an *extraordinary* showing of injury" that was plainly "sufficient," but "not necessary," to prove Establishment Clause standing. *Id.* at 1088 (emphasis added).

used to curtail the First Amendment rights of public school students.  885 F.3d 280, 284–85 (4th Cir. 2018).  We recognized that in such a case a plaintiff can "satisfy the injury-in-fact requirement for prospective relief" either by demonstrating "a sufficiently imminent injury in fact" or by demonstrating "an ongoing injury" caused by the chilling effect of self-censorship.  *Id*. at 288; *see also Abbott v. Pastides*, 900 F.3d 160, 168 (4th Cir. 2018) (noting that a plaintiff may seek "prospective relief against ongoing *or* imminent First Amendment violations" (emphasis added)).  Unlike injuries that occurred in the past and may no longer be imminent, ongoing injuries are, by definition, *actual* injuries for purposes of Article III standing.[3]

## B.

The County further contends, and the district court held, that since Jessica no longer attends a Mercer County school, appellants also lack standing because an injunction would not meaningfully redress their injuries.

To satisfy the redressability element of standing, a plaintiff "must show that 'it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'"  *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018) (quoting *Laidlaw*, 528 U.S. at 181).  The burden imposed by this requirement is not

---

[3] To avoid this result, the County mistakenly relies on *Suhre*.  There, we considered the constitutionality of a Ten Commandments display located in the main courtroom of a county courthouse.  131 F.3d at 1084–85.  Suhre, who came to the courthouse frequently, had stated an "unmistakeable intention to participate in future judicial and municipal business at the courthouse when the occasion arises."  *Id*. at 1091.  This intention established imminence, and we found that Suhre thus had standing to seek injunctive relief.  *Id*.  But that holding clarifies little about this case since, as we have explained, appellants assert injuries that are both actual and ongoing.

onerous.  Plaintiffs "need not show that a favorable decision will relieve [their] every injury." *Id.* (quoting *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982)).  Rather, plaintiffs "need only show that they personally would benefit in a tangible way from the court's intervention." *Id.* (internal quotation marks omitted).

In fact, an injunction would redress both of the ongoing, independent injuries that appellants allege here.  If the district court were to enjoin the County from offering the BITS program to students in the future, Deal would no longer feel compelled to send Jessica to a neighboring school district to avoid what Deal views as state-sponsored religious instruction.

Moreover, an injunction would also alleviate appellants' ongoing feelings of marginalization.  We have explained that "[f]eelings of marginalization and exclusion are cognizable forms of injury, particularly in the Establishment Clause context, because one of the core objectives of modern Establishment Clause jurisprudence has been to prevent the State from sending a message to non-adherents of a particular religion 'that they are *outsiders*, not full members of the political community.'" *Moss*, 683 F.3d at 607 (quoting *McCreary Cty. v. ACLU*, 545 U.S. 844, 860 (2005)).  An injunction would eliminate the source of that message and thereby redress appellants' alleged injuries.

Resisting this result, the County maintains that appellants' avoidance-based injuries are not redressable because Deal did not *avow* in the complaint that she would reenroll her

daughter in a Mercer County school if the district court were to issue an injunction.[4]  But appellants' feelings of marginalization constitute an independently actionable injury.  And in any event, our standing jurisprudence does not require such formalism.  Rather, "[t]he removal of even one obstacle to the exercise of one's rights, even if other barriers remain, is sufficient to show redressability."  *Sierra Club*, 899 F.3d at 285.  Applied here, the "opportunity" to return Jessica to her home district, in addition to alleviating appellants' ongoing feelings of marginalization, is surely a "tangible benefit" sufficient to confer standing.  *Id.* (internal quotation marks omitted).[5]

III.

In addition to concluding that appellants lacked standing to seek injunctive relief, the district court held that appellants' claims were not ripe.  The court reasoned that, in

---

[4] The County heavily relies on *Freedom from Religion Foundation Inc v. New Kensington Arnold School District*, 832 F.3d 469 (3d Cir. 2016).  There, the plaintiff filed an Establishment Clause challenge to a Ten Commandments monument located near the entrance of her daughter's high school.  *Id*. at 473.  As here, the school district challenged the plaintiff's standing to seek an injunction after the plaintiff moved her daughter to another school.  *Id*. at 474.  Although the court suggested that the plaintiff "would permit" her daughter to return to her home school if the monument were removed, *id.*, it did not treat that fact as a necessary condition for the plaintiff to establish standing.  Moreover, the plaintiffs in *New Kensington*, unlike appellants, did not claim to suffer from feelings of marginalization and exclusion.

[5] Because appellants have standing to seek injunctive relief, we need not reach their novel contention that nominal damages alone, without any other cognizable form of relief, can create standing from the outset of a case.  *See, e.g.*, *Am. Humanist Assoc. v. Md.-Nat'l Capital Park & Planning Comm'n*, 874 F.3d 195, 203–04 (4th Cir. 2017) (finding plaintiffs had standing to pursue other forms of relief without separately addressing standing to seek nominal damages).

view of the BITS program's suspension, the court could not "evaluate the content of future BITS classes because they do not exist."  In so holding, the district court seems to have concluded that because BITS was unlikely to return in its current form, a challenge to it was moot.  Where, as here, the parties do not dispute the relevant jurisdictional facts, we review a district court's dismissal based on ripeness and mootness de novo.  *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017); *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 752 (4th Cir. 2013).

A.

Like other justiciability doctrines, ripeness derives from Article III.  *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003).  The ripeness doctrine addresses "the appropriate timing of judicial intervention," *Cooksey v. Futrell*, 721 F.3d 226, 240 (4th Cir. 2013) (internal quotation marks omitted), and "prevents judicial consideration of issues until a controversy is presented in 'clean-cut and concrete form,'" *Miller v. Brown*, 462 F.3d 312, 318–19 (4th Cir. 2006) (quoting *Rescue Army v. Mun. Court of City of L.A.*, 331 U.S. 549, 584 (1947)).  In reviewing a ripeness claim, "we consider '(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration.'"  *Cooksey*, 721 F.3d at 240 (quoting *Nat'l Park Hosp. Ass'n*, 538 U.S. at 808).

The district court erred in treating the temporary suspension of the BITS program as raising ripeness concerns.  Appellants challenge only the BITS program *as it existed* at the time the suit was filed.  To be sure, any challenge brought now to a future version of BITS would face ripeness concerns.  This is so because the Establishment Clause requires

12

us to undertake a fact-intensive inquiry that may prove impossible until the precise contours of a redesigned Bible instruction course are known. *See McCreary Cty.*, 545 U.S. at 867 ("[U]nder the Establishment Clause detail is key."); *Van Orden v. Perry*, 545 U.S. 677, 700 (2005) (Breyer, J., concurring in the judgment) (describing Establishment Clause analysis as "fact-intensive"); *Am. Humanist Ass'n*, 874 F.3d at 211 ("Establishment Clause cases are fact-specific, and our decision is confined to the unique facts at hand."). But that is not this case. The County cannot, as it evidently seeks to do here, reframe this case as an unripe challenge to some future iteration of BITS in order to avoid the demanding requirements of demonstrating mootness.

B.

In reaching its contrary conclusion on ripeness, the district court implicitly determined that appellants' challenge to the suspended BITS program was also moot. Unlike standing, which "is determined at the commencement of a lawsuit[,] . . . subsequent events can moot" an otherwise validly raised claim. *Pashby v. Delia*, 709 F.3d 307, 316 (4th Cir. 2013). A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011) (internal quotation marks omitted).

When a defendant voluntarily ceases a challenged program, however, the analysis requires additional rigor. In such a case, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Laidlaw*, 528 U.S. at 189 (internal quotation marks omitted). Rather, a party asserting mootness bears a "heavy burden of persuading" the court that

13

"subsequent events [make] it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (alteration omitted and emphasis added).

In its written submission to this court, the County did not even attempt to meet this standard, persisting instead in its dogged attempt to reframe the issue as one of ripeness. When pressed at oral argument, the County reversed course and suggested that appellants' claims are both moot (as to the suspended program) *and* not ripe (as to any future reimplementation of a new program). Even assuming this argument is not forfeited, it is meritless.

The County has consistently described the BITS program as "suspend[ed]," rather than eliminated outright. Indeed, the County has characterized the suspension as part of a regular review process, a dubious suggestion in view of the program's uninterrupted, decades-long history. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (explaining that the voluntary cessation exception prevents a defendant from "engag[ing] in unlawful conduct, stop[ping] when sued to have the case declared moot, then pick[ing] up where he left off").

Moreover, we have held a defendant does not meet its burden of demonstrating mootness when it retains authority to "reassess" the challenged policy "at any time." *Pashby*, 709 F.3d at 316. Here, news reports submitted to the district court by the County itself emphasized that the County was "still vigorously contesting" this suit and "fighting" to retain the BITS program. Rather than enhancing the County's case, these press reports reveal the precise problem with relying on a party's voluntary cessation of unconstitutional

14

activity to establish mootness.  Indeed, we have routinely found such evidence insufficient. *See Porter*, 852 F.3d at 364–65 (collecting cases).

Nor do we find compelling the fact that BITS teachers received a notice from the Mercer County Board of Education that their employment might be terminated.  To the extent this has persuasive value, it is undercut by Superintendent Akers' description of the notices as a "precautionary measure" driven solely by this litigation and the school district's "mandatory timelines" for informing teachers of their ongoing employment status.  Such equivocal evidence cannot save the County's mootness claim.[6]

In sum, the County has not carried its burden of showing that subsequent events make it "absolutely clear" that the suspended version of the BITS program will not return in identical or materially indistinguishable form.  *Laidlaw*, 528 U.S. at 189.  Appellants' current claims are therefore not moot.  Of course, this does not prevent the district court from addressing mootness in the future if presented with that issue.

## IV.

Appellants have adequately pled ongoing injuries that, if proven, are redressable by an injunction.  Moreover, subsequent events have not rendered appellants' present claims moot or not ripe.  Accordingly, the judgment of the district court is

---

[6] At oral argument before us, the County also sought to rely on its counsel's statement to the district court that "it is clear from media accounts that the curriculum that is complained about in the complaint is over and is not coming back."  Although we have at times given weight to such claims, *see, e.g.*, *Grutzmacher v. Howard County*, 851 F.3d 332, 349 (4th Cir. 2017), counsel's statement in this case merely leads us back to the same press accounts that undermine the County's mootness claim in the first place.

*REVERSED AND REMANDED.*