**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION**

| | | |
|---|---|---|
| FREEDOM FROM RELIGION | § | |
| FOUNDATION, INC., et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No.: 1:17-cv-00642 |
| v. | § | |
| | § | Hon. David A. Faber |
| MERCER COUNTY BOARD | § | |
| OF EDUCATION, et al., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MERCER COUNTY
BOARD OF EDUCATION, MERCER COUNTY SCHOOLS, AND DR. DEBORAH
AKERS'S MOTION TO DISMISS**

On December 17, 2018, the Fourth Circuit held that the instant case is not moot because "[t]he County has consistently described the [Bible in the Schools, a/k/a] BITS program as 'suspend[ed],' rather than eliminated outright." On January 3, 2019, the Mercer County Board of Education (the "Board") passed a resolution stating that the Board (1) "will never offer of employ the BITS program in any of its schools," (2) "does not now or in the future intend to offer a Bible elective curriculum in any of its elementary schools," and (3) "will not now or in the future employ teachers for the purpose of teaching a Bible elective curriculum in any of its elementary schools."[1]  In the Fourth Circuit and every other circuit, a legislative repeal, such as the Board's, makes a case moot unless "reenactment is not merely possible but appears probable." *Brooks v. Vassar*, 462 F.3d 341, 348 (4th Cir. 2006). Therefore, any concerns expressed in the Fourth Circuit's opinion that the BITS program was not "eliminated outright" have been resolved, and Plaintiffs' claims are moot.

---

[1] See Ex. 1, Declaration of Paul Hodges at ¶ 4 & Ex. 1-A.

Further, Dr. Akers is entitled to qualified immunity.  Given that even Supreme Court justices have described Establishment Clause jurisprudence as "a hopeless disarray" "of crooked lines and wavering shapes," a sentiment echoed by numerous courts, very few rights under the Establishment Clause are "clearly established," and to the extent that the Court has weighed in on biblical curricula in public schools, the Court has repeatedly indicated that such curricula are not per se unconstitutional.  *See*, *e.g.*, *Stone v. Graham*, 449 U.S. 39, 42 (1980) (per curiam) ("The Bible may constitutionally be used in an appropriate study of history, civilization, ethics, comparative religion or the like.").  The Fourth Circuit has similarly affirmed the constitutionality of curriculum that "involved no more than having the class read, discuss, and think about" religion. *Wood v. Arnold*, 915 F.3d. 308, 317 (4th Cir. 2019).  The West Virginia Attorney General similarly opined that biblical instruction in public schools is permissible.  [Docs. 25-1, 25-3].

Plaintiffs' claims are also barred by the two-year statute of limitations for § 1983 claims in West Virginia.  Plaintiff's First Amended Complaint states that Jessica Roe was exposed to the Bible in the Schools classes, and accrued her § 1983 claim, no later than 2013.  FAC ¶ 34-35. Plaintiffs first filed this suit on January 18, 2017.  Because this suit was filed, at a minimum, more than three years after Jessica Roe and Elizabeth Deal acquired their § 1983 claim, the Court should grant Defendants' motion to dismiss those claims as barred by the statute of limitations.[2]

## BACKGROUND

This case involves an Establishment Clause challenge to the former Mercer County BITS program.  Most of the pertinent factual background can be found in Defendants' prior motion to dismiss. *See* [Doc. 26] at 2-5.  The BITS program was a voluntary, opt-in program that uses the

---

[2] "Defendants" as used herein refers collectively to Mercer County Board of Education, Mercer County Schools, and Dr. Deborah Akers.  Rebecca Peery has not been served, and has only specially appeared before this court.

Bible to teach lessons to schoolchildren.  FAC ¶¶ 35, 38. The BITS program was privately funded; no public funds were used to administer the program.  FAC ¶ 24.

FFRF initially filed suit on behalf of plaintiffs who were too young to attend public school, and their parents, in Mercer County (the "Doe Plaintiffs") [Doc. 1].  In the First Amended Complaint ("FAC"),[3] Jessica Roe, a former student in Mercer County Schools, and her mother Elizabeth Deal joined this suit.  Defendants filed a motion to dismiss arguing that the case was unripe as to those Plaintiffs who were too young to attend school in Mercer County, and unripe and moot as to Deal and Roe, as Roe was no longer enrolled in Mercer County Schools and expressed no intent to return. [Docs. 25, 26].

Mootness was further suggested due to the indefinite suspension of the BITS program.  In April 2017, the Board provided to the BITS teachers that their contract would not be renewed. [Docs. 30-1, 30-3].  On May 23, 2017, Dr. Akers recommended that the Board suspend the BITS program pending review.  Ex. 1 at ¶ 3 .  On that day, the Board accepted Dr. Akers recommendation and suspended the BITS program.  *Id*.

The Court agreed that this case was unripe as to the Doe Plaintiffs and moot as to Roe and Deal.  The Doe Plaintiffs and Freedom from Religion Foundation, Inc. did not appeal the Court's decision.  Only Deal and Roe appealed the Court's determination they lacked standing.  On appeal, the Fourth Circuit held that the case is not moot.  The Court relied primarily on language indicating the BITS program was "suspended," rather than terminated. *See Deal v. Mercer County Bd. of Educ.*, 911 F.3d 183, 191 (2019). The court also pointed to certain press accounts in which Dr. Akers announced the schools were "fighting" the lawsuit. *Id*. at 192.  Defendants are in the process of asking the Supreme Court to review Fourth Circuit's opinion.

---

[3] [Doc. 21]

The Board is a five-member body that sets policy for public schools in Mercer County. W. VA. CODE § 18-5-1; Ex. 1 at ¶ 2.  Superintendent Akers reports to the Board, but is not a member of the Board and has no control over the Board.  *Id*. at ¶ 2.  On January 3, 2019, the Mercer County Board of Education passed a resolution terminating the BITS program now and in the future. Ex. 1 at ¶ 4.  The resolution states that "the BITS program is no longer compatible with the educational mission of MCS" and that the Board "will never offer or employ the BITS program in any of its schools." *See* Ex. 1-A.  Moreover, the resolution states that the Board will not "offer a Bible elective curriculum" or "employ teachers for the purpose of teaching a Bible elective curriculum" in its elementary schools.  *Id*.  The resolution permanently ends the BITS program and renounces any intent to bring the BITS program or similar program back to Mercer County.  Furthermore, the contracts for the teachers previously employed as a part of the BITS program have been either not been renewed, or renewed under new assignment within Mercer County Schools. Ex. 1 at ¶ 5.

## ANALYSIS

The claims against Defendants Mercer County Board of Education, Mercer County Schools, and Dr. Deborah Akers[4] are moot because the Mercer County Board of Education ("Board") has formally resolved to eliminate the BITS program and not to reinstate any biblical curriculum in its elementary schools.

**A. Under Fourth Circuit precedent, this case is moot in its entirety.**

**1. Every Circuit, including the Fourth, recognizes that legislative repeal of a policy moots injunctive or declaratory relief.**

The "heavy burden" to show that a case is moot because of Defendant's conduct is met where "the challenged conduct cannot reasonably be expected to recur." *See Friends of the Earth,*

---

[4] To date, Defendant Peery has not been served and has only specially appeared in this Court.  For these reasons, she does not join in this motion.

*Inc. v. Laidlaw Environmental Servs., Inc.* 528 U.S. 167, 189 (2000); *Doe v. Shalala*, 122 F. App'x 600, 602 (4th Cir. 2004). In the Fourth Circuit, a governmental entity meets that burden when it (1) formally changes its policy, and (2) indicates it will not return to the challenged conduct.

Where these two factors exist, the Fourth Circuit will find a case moot. For example, the Fourth Circuit has held that a challenge to fire department's social media policy was moot where "in addition to adopting a new Social Media Policy and revised Code of Conduct," the fire chief submitted an affidavit that "'[he] fully intend[s] to operate under the newly issued [policies] and do[es] not intend to re-issue the original versions.'" *Grutzmacher v. Howard Cnty.*, 851 F.3d 332, 349 (4th Cir. 2017). The *Grutzmacher* court favorably cites a Tenth Circuit opinion for the proposition that "public officials' alteration of challenged policy, coupled with [a] sworn affirmation that they would not revert to the policy previously in effect, rendered plaintiff's challenge moot"). *Id.* (citing *Winsness v. Yocom*, 433 F.3d 722, 736 (10th Cir. 2006)).

In cases where a legislative body formally repeals a policy, courts will find the case moot unless "reenactment is not merely possible but appears probable." *Brooks v. Vassar*, 462 F.3d 341, 348 (4th Cir. 2006) (citing *Am. Legion Post 7 of Durham, N.C. v. City of Durham*, 239 F.3d 601, 606 (4th Cir. 2002)); *see also Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 116 (4th Cir. 2000) ("statutory changes that discontinue a challenged practice are 'usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed.'" (quoting *Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994)); *Doe v. Shalala*, 122 F. App'x 600, 602 (4th Cir. 2004) ("A legislature may voluntarily cease allegedly illegal conduct by amending or repealing the challenged law or by allowing it to expire. In general, the amendment, repeal, or expiration of a statute moots any challenge to that statute.").

The Fourth Circuit is not an outlier. As the Ninth Circuit has similarly observed:

> [V]oluntary cessation is different from a statutory amendment or repeal. Repeal is "usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed." Cases rejecting mootness in such circumstances "are rare and typically involve situations where it is virtually certain that the repealed law will be reenacted."

*Log Cabin Republicans v. United States*, 658 F.3d 1162, 1167 (9th Cir. 2011) (internal citations omitted). In fact, the federal circuit courts unanimously presume that legislative repeal indicates the challenged policy will not return. *See Yarls v. Bunton*, 905 F.3d 905, 911 (5th Cir. 2018) ("[W]e assume that formally announced changes to official government policy are not mere litigation posturing"); *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1332 (11th Cir. 2005) ("This Court and the Supreme Court have repeatedly held that the repeal or amendment of an allegedly unconstitutional statute moots legal challenges to the legitimacy of the repealed legislation."); *Marcavage v. Nat'l Park Serv.*, 666 F.3d 856, 861-862 (3d Cir. 2012) ("[T]his presumption [that government officials act in food faith] and the changes to the Park Service's regulations . . . make[s] it unreasonable to expect that future constitutional violations will occur"); *Citizens for Responsible Gov't State PAC v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000) ("In general, the repeal of a challenged statute is one of those events that makes it 'absolutely clear that the allegedly wrongful behavior . . . could not reasonably be expected to recur.'").[5]

---

[5] *See also Teague v. Cooper*, 720 F.3d 973, 977 (8th Cir. 2013) (Agreeing with *Valero*, 211 F.3d at 116 "'that statutory changes that discontinue a challenged practice are usually enough to render a case moot'"); *Nelson v. Miller*, 570 F.3d 868, 882 (7th Cir. 2009) (finding a case moot where the government changed its behavior "and there is no evidence in the record" that it would resume its old behavior); *D.H.L. Assocs. v. O'Gorman*, 199 F.3d 50, 55 (1st Cir. 1999) (holding the suit moot, because challenges to repealed laws are normally moot, and the court found that "it would be unreasonable to presume that the Town would return to its prior zoning plans after the conclusion of this litigation"); *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997) (stating that in the case of a formal repeal "there must be evidence indicating that the challenged law likely will be reenacted" to avoid mootness); *Ky. Right to Life v. Terry*, 108 F.3d 637, 645 (6th Cir. 1997) (discussing the "general rule that legislative repeal of a statute renders a case moot"); *Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50,

Consequently, the Fourth Circuit holds cases involving revoked government policies are moot unless multiple factors indicate a probable return of the challenged policy.  For example, a challenge to death row conditions was not moot where the Corrections Department "(1) 'retain[ed] the authority and capacity' to return to the challenged policies, (2) refuse[d] to 'promise[] not to resume the prior practice,' and (3) has suggested circumstances may require re-imposing the challenged policies."  *See Porter v. Clarke*, 852 F.3d 358, 366 (4th Cir. 2017) (internal citations omitted).  Similarly, a challenge to a repealed inmate policy was not moot where (1) "the Corrections Department failed to establish that it would not reinstate the policy following completion of the lawsuit;" (2) "the Corrections Department did not suggest it was barred or considered itself barred from reinstating the policy if it so chose;" and (3) "there was 'some degree of doubt that the new policy w[ould] remain in place for long.'" *Wall v. Wade*, 741 F.3d 492, 497 (4th Cir. 2014)).

Here, the Fourth Circuit signaled a formal repeal could moot this suit by inviting this court to reconsider mootness based on future developments.  *See Deal*, 911 F.3d at 191 ("Of course, this does not prevent the district court from addressing mootness in the future if presented with that issue.").  That invitation is unsurprising given the long line of cases that a case is mooted by legislative repeal.  The Board passed a resolution that "its schools will never offer or employ the BITS program in any of its schools" not offer any "Bible elective curriculum in any of its elementary schools."  *See* Ex. 1-A.  As a result, the teachers who were once a part of the BITS program were let go or reassigned.  As in other cases where the Fourth Circuit has affirmed that a

61 (2d Cir. 1992) (noting that "constitutional challenges to statutes are routinely found moot when a statute is amended.").

case has become moot, the challenged policy has not only been replaced, the responsible body has stated unequivocally that the policy will not be reinstated.

Additionally, there is no basis to find return of the BITS program "appears probable."  In finding the case was not moot on the facts sent to it, the Fourth Circuit emphasized that the program was described as "suspended." *Id.* at 191 ("The County has consistently described the BITS program as 'suspend[ed],' rather than eliminated outright."). This concern was eliminated by the School Board's resolution formally terminating the program.  Moreover, to the extent that the Fourth Circuit relied on published statements by Dr. Akers, *see, e.g.*, *id*. at 192, her statements are irrelevant to the Board's resolution.  Dr. Akers is not on the Board and does not have the power to reenact the BITS program.

### 2. *Plaintiffs' claim for nominal damages cannot save this case from mootness.*

Not only are Plaintiffs' claims for injunctive and declaratory relief moot, the Fourth Circuit and multiple other circuits have held that a claim for nominal damages will not prevent mootness where the purpose of the suit is to challenge a government policy that is subsequently revoked.

For example, the Fourth Circuit affirmed a district court's determination that a challenge to an ordinance regulating signs and other displays "was mooted by the City's subsequent amendment of that ordinance."  *Am. Legion Post 7*, 239 F.3d at 605.  The American Legion's suit against the City of Durham "sought injunctive relief, a declaratory judgment that the ordinance was unconstitutional, damages, and costs."  *Id*. at 604.  The court affirmed the district court's holding of mootness in its entirety, without distinguishing between its requests for prospective relief and damages. *See id*. at 606.

The Eleventh and Sixth Circuits have also held that a claim for nominal damages will not preclude mootness where a governmental entity repeals the challenged policy.  The Eleventh

Circuit recently held that "a prayer for nominal damages will not sustain" a "constitutional challenge to legislation that is otherwise moot." *Flanigan's Enters. v. City of Sandy Springs*, 868 F.3d 1248, 1264 (11th Cir. 2017). The court reasoned that "all of [the plaintiffs'] alleged injuries would be remedied by, and therefore all possible relief exhausted by, removal of the challenged Ordinance provision." *Id.* at 1265. Because the repeal of the ordinance resulted in the relief plaintiffs sought, the court held they "have already won. Their victory, while perhaps not expedient, is comprehensive." *Id*. at 1264. The Sixth Circuit also held that nominal damages will not maintain a suit "on a regime no longer in existence." *Morrison v. Bd. of Educ*., 521 F.3d 602, 611 (6th Cir. 2008). Because the policy at issue was repealed after the suit was filed, the court found that the case was no longer redressable and "allowing [the case] to proceed to determine the constitutionality of an abandoned policy – in the hope of awarding the plaintiff a single dollar – vindicates no interest and trivializes the important business of the federal courts." *Id*.

Similarly, the Second Circuit has held that a "claim for nominal damages, which is clearly incidental to the relief sought, cannot properly be the basis upon which a court should find a case or controversy where none in fact exists." *Kerrigan v. Boucher*, 450 F.2d 487, 489-90 (2d Cir. 1971). As the above cited cases, the court noted that all claims for prospective relief were moot. *Id*. at 489 (finding that there was no "subsisting relationship between plaintiff and defendants upon which any declaratory or injunctive relief could be bottomed"). Although *Kerrigan* did not involve legislative repeal, the court reasoned that "the defendants thought it was the better part of wisdom to return the plaintiff's property rather than undergo the expense of defending this law suit which has broad constitutional implications." *Id*.[6]

---

[6] Plaintiffs may argue that in certain instances the Fourth Circuit has allowed nominal damages to save a case where the relief was otherwise moot. *Covenant Media of S.C., LLC v. City of N. Charleston*, 493 F.3d 421, 429 (4th Cir. 2007) ("Covenant alleges a personal injury -- untimely

This court should follow the lead of the Fourth, Second, Sixth, and Eleventh Circuits and hold that nominal damages will not sustain a suit where the case challenging a government policy where all other relief is mooted.

### 3.  In the alternative, the court should award only nominal damages.

Should the Court decide that Plaintiffs' claim for $1.00[7] is sufficient to maintain this suit despite the unavailability of other relief, a simple judgment awarding nominal damages and reasonable attorney fees grants plaintiffs "all of the relief they requested." *Ward v. Santa Fe Indep. Sch. Dist.*, 393 F.3d 599, 603 (5th Cir. 2004); *see also Shalford v. Shelley's Jewelry, Inc.*, 127 F. Supp. 2d 779, 789 (W.D.N.C. 2000) (finding that "conducting a trial to establish nominal damages would be a waste of judicial resources").

The Fifth Circuit upheld such a judgment following remand to the district court after it determined that "there remained a cognizable claim for nominal damages" following a school board's revision of a challenged policy.[8] On remand, the district court entered judgment for the plaintiffs for nominal damages and attorney fees without issuing findings of fact or conclusions of

---

consideration of its December 2004 Application -- that was caused by North Charleston's application of the allegedly unconstitutional Sign Regulation and that is redressable by nominal damages"); *Henson v. Honor Comm. of U. Va.*, 719 F.2d 69, 72 n.5 (4th Cir. 1983) ("the deprivation of procedural due process creates an independent right to seek, at a minimum, nominal damages"). However, these cases involve Due Process challenges, which (1) are necessarily backwards looking, and (2) would not be remedied by the repeal of the legislation at issue. *See Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1266 (10th Cir. 2004) (McDonnell, J., concurring) ("The question, as with declaratory judgment actions involving past conduct, is whether an award of nominal damages will have practical effect on the parties' rights and responsibilities in the future."). Here, any question regarding the parties' relation in the future was resolved by the school board's repeal.

[7] *See Price v. City of Charlotte*, 93 F.3d 1241, 1246 (4th Cir. 1996) (noting that an award of nominal damages is "typically one dollar").

[8] *See Ward*, 393 F.3d at 602 (citing *Ward v. Santa Fe Indep. Sch. Dist.*, 35 F. App'x 386 (2002)).

law. *Id.* at 602. The plaintiffs appealed to the Fifth Circuit, arguing that it was error for the district court to enter judgment without findings of fact or conclusions of law.

The Fifth Circuit upheld the judgment, holding that "the plaintiffs received all of the relief they requested and cannot demonstrate any adverse effect resulting from the judgment." *Ward*, 393 F.3d at 603. Because only nominal damages were at issue, the judgment provided all of the relief to which plaintiffs were entitled. *Id.* The victorious plaintiffs were not entitled to the opinion they wanted; "[f]ederal appellate courts review judgments, . . . not opinions." *Id.*; *see also Chathas v. Local 134 IBEW*, 233 F.3d 508, 512 (7th Cir. 2000) ("A winning party cannot appeal merely because the court that gave him his victory did not say things that he would have liked to hear, such as that his opponent is a lawbreaker."). Here, if Plaintiffs' claim for nominal damages sustains the case, this case should proceed only on the only live issue—nominal damages.

### 4. The Court need not continue this suit past this motion.

Nothing in the record would support a determination that a return to the BITS program is "probable," as is necessary to overcome the presumption of mootness. Therefore, the Court should follow the long line of precedent holding cases involving legislative repeal are moot. If the Court determines that a live claim for nominal damages survives the school board's repeal, the Court should enter a judgment of nominal damages consistent with Defendants' offer of judgment. [Doc. 24]. It would be unreasonable for the court to allow the parties to continue this case to trial where the only relief at issue is one dollar or some other nominal amount, especially when Defendants have offered to enter a judgment in an amount in excess of nominal damages. *Id.*

### B. Plaintiffs fail to state a claim against Deborah Akers that satisfies qualified immunity

#### 1. The FAC does not plead facts to support personal or supervisory liability against Dr. Akers.

11

The FAC does not satisfy Rule 8 pleading standards in its claims against Dr. Akers.  In order to satisfy Rule 8 in an individual capacity suit, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  Plaintiffs don't identify any actions Dr. Akers took personally to cause them injury; at most, Plaintiffs contend that Dr. Akers is liable as a supervisor. *See* FAC ¶ 98 ("In overseeing the Bible in the Schools Program, Deborah Akers has coerced students into receiving religious instruction.").   In an action against a supervisor under § 1983, a plaintiff "must show actual or constructive knowledge of a risk of constitutional injury, deliberate indifference to that risk, and 'an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.'" *Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999) (quoting *Shaw v. Stround*, 13 F.3d 791, 799 (4th Cir. 1994)).  Deliberate indifference requires that a supervisor repeatedly failed to act "in the face of documented and widespread abuses." *Dawkins v. Arthur*, 701 F. App'x 191, 194 (4th Cir. 2017) (quoting *Shaw*, 13 F.3d at 194)).  Plaintiffs' pleadings fall well short of alleging the particular misconduct necessary for Ms. Akers to be responsible in her individual capacity, as Defendants have previously conceded.  [Doc. 28] at 20 (discussing Plaintiffs' need to develop facts about Dr. Akers "specific conduct.").

## 2. Even if the Court determines that the allegations state a claim against Ms. Akers, she is entitled to qualified immunity.

Because the allegations against Dr. Akers in her individual capacity fail to even state a claim against her, they fall far short of overcoming qualified immunity.[9]  Qualified immunity "protects government officials from civil damages in a 42 U.S.C.S. § 1983 action insofar as their

---

[9] Although not named here to avoid any argument of waiver regarding Plaintiffs' failure to serve process, the same analysis applies to Rebecca Peery, who the complaint also names in her individual capacity.

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Edwards v. City of Goldsboro*, 178 F.3d 231, 250 (4th Cir. 1999). Qualified immunity is not merely immunity from liability, but immunity from suit. *See Gooden v. Howard Cnty., Md.*, 954 F.2d 960, 965 (4th Cir. 1992) ("The basic purpose of qualified immunity . . . is to spare individual officials the burdens and uncertainties of standing trial in those instances where their conduct would strike an objective observer as falling within the range of reasonable judgment."). The Court's qualified immunity analysis may first look to whether the right allegedly violated is "clearly established." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that courts have discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first"). If the violated right is not clearly established, immunity is proper. *Id.*

As opposed to the broad, unparticularized allegations set forth in the Complaint, the Court's qualified immunity inquiry demands a "high level of particularity." *Doe v. S.C. Dep't of Soc. Servs.*, 597 F.3d 163, 176 (4th Cir. 2010). A right is clearly established only when it has been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the state. *Id.* Moreover, the clearly established inquiry must be viewed from the layman's perspective, not from the view of one trained in the law. *Bland v. Roberts*, 730 F.3d 368, 394 (4th Cir. 2013).

### a. Federal judges regularly express frustration with the lack of clarity in Establishment Clause jurisprudence.

As the Supreme Court and numerous federal circuit courts have noted, very little of the courts' Establishment Clause jurisprudence is "clearly established." Numerous Supreme Court justices have bemoaned the lack of clarity and consistency in the Court's Establishment Clause precedents. *See Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 319 (2000) (Rehnquist, C.J., dissenting) (noting that "*Lemon* has had a checkered career in the decisional law of this Court.");

*Rosenberger v. Rectors of the Univ. of Va.*, 515 U.S. 819, 861 (1995) (Thomas, J., concurring) (bemoaning that "our Establishment Clause jurisprudence is in hopeless disarray"); *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 399 (Scalia, J., concurring) (agreeing with "the long list of constitutional scholars who have criticized *Lemon* and bemoaned the strange Establishment Clause geometry of crooked lines and wavering shapes its intermittent use has produced."); *Comm. for Pub. Ed. & Religious Liberty v. Regan*, 444 U.S. 646, 671 (1980) (Stevens, J., dissenting) (deriding "the sisyphean task of trying to patch together the blurred, indistinct, and variable barrier described in *Lemon*").

The Fourth Circuit has similarly indicated that Establishment Clause analyses are nuanced and not subject to broad pronouncements.  In a very recent analysis, the Fourth Circuit emphasized that "context is crucial" for Establishment Clause analyses.  *Wood*, 915 F.3d at 314. Assessing alleged violations of the Establishment Clause "in isolation would violate the analysis mandated by the Supreme Court in *Lemon*." *Id.*[10]

Given the state of confusion that even highly competent federal judges and Supreme Court justices have expressed about Establishment Clause jurisprudence, it would be a rare case where a

---

[10] Other federal courts have similarly expressed confusion in Establishment Clause jurisprudence. *Barnes v. Cavazos*, 966 F.2d 1056, 1063 (6th Cir. 1992) ("The *Lemon* test has received criticism from virtually every corner and we add our voices to those who profess confusion and frustration with *Lemon*'s analytical framework"); *Green v. Haskell Cty. Bd. of Comm'rs*, 574 F.3d 1235, 1235 n.1 (Kelly, J., dissenting) (10th Cir. 2009) ("Whether [*Lemon*] and its progeny actually create discernible 'tests,' rather than a mere ad hoc patchwork, is debatable."); *Card v. City of Everett*, 520 F.3d 1009, 1023-24 (9th Cir. 2008) (Fernandez, J., concurring) ("The still stalking *Lemon* test and the other tests and factors, which have floated to the top of this chaotic ocean from time to time in order to answer specific questions, are so indefinite and unhelpful that Establishment Clause jurisprudence has not become more fathomable."); *Skoros v. City of N.Y.*, 437 F.3d 1, 13 (2d Cir. 2006) (noting that the Supreme Court justices "have rarely agreed -- in either analysis or outcome –" on Establishment Clause cases.); *Harris v. City of Zion*, 927 F.2d 1401, 1419 (7th Cir. 1991) (Easterbrook, J., dissenting) ("Lemon's "three-part test" is not a test. It is a triad of questions, the answers to which conflict in all interesting cases.").

layman could be expected to conduct the fact- and context-based inquiry required to determine whether a particular practice violates the Establishment Clause. It is even more rare for such a violation to be "clearly established."  This is not such a case.

      **b.  The Supreme Court and Fourth Circuit have repeatedly indicated that schools are not precluded from religious curricula.**

The Supreme Court and the Fourth Circuit have repeatedly held that teaching biblical or religious curricula are not *per se* unconstitutional. The Supreme Court has consistently indicated that public schools are not prohibited from teaching about the Bible or other religious texts.  *See Stone v. Graham*, 449 U.S. 39, 42 (1980) (per curiam) ("The Bible may constitutionally be used in an appropriate study of history, civilization, ethics, comparative religion or the like."); *Epperson v. Arkansas*, 393 U.S. 97, 106 (1968) ("Study of religions and of the Bible form a literary and historic viewpoint, presented objectively as a part of a secular program of education, need not collide with the First Amendment's prohibition."); *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 225 ("Nothing we have said here indicates that such study of the Bible or of religion, when presented objectively as part of a secular program of education, may not be effected consistently with the First Amendment.").  School administrators should be permitted to rely on these assurances.  As the Seventh Circuit observed, "If the [Supreme] Court proclaims that a practice is consistent with the Establishment Clause, we take its assurances seriously. If the Justices are pulling our leg, let them say so."  *Sherman v. Cmty. Consol. Sch. Dist. 21*, 980 F.2d 437, 448 (7th Cir. 1992).

The Fourth Circuit has also indicated that public schools are not prohibited from teaching about religion.  The Fourth Circuit recently held that a curriculum that "involved no more than having the class read, discuss, and think about" religion did not violate the Establishment Clause.  *Wood*, 915 F.3d at 317.  The court held a compulsory curriculum which taught students that a

typical Muslim's faith is stronger than the average Christian's and required students to identify the Five Pillars of Islam did not violate the Establishment Clause. *Wood*, 915 F.3d at 312-13.   In upholding the curriculum, the court explained that "educational materials[] which identify the views of a particular religion[] do not amount to an endorsement of religion." *Id.* at 317; *compare with* FAC at ¶ 83 ("This lesson teaches about Jesus and his death as a moral lesson and as a way of introducing students to the key tenets of the Christian religion.").

Schools may similarly teach the Bible in a way that identifies core beliefs of Christianity, such as the crucifixion and resurrection, or Judaism, such as observance of the Ten Commandments.  *See Peck v. Upshur County Bd. of Educ.*, 155 F.3d 274, 288 (4th Cir. 1998) ("The Bible is no less deserving of the Constitution's protection than any other text of faith."). As the Fourth Circuit explained in *Mellen v. Bunting*, if a public school, such as Virginia Military Academy, "desires to teach cadets about religion, it is entitled to offer such classes in its curriculum." 327 F.3d 355, 372 n.10 (4th Cir. 2003).

This is consistent with courts' frequent recognition that classes involving religious study can serve legitimate secular purposes, and may even be necessary for a thorough education.  *See Wood*, 915 F.3d at 315-316 ("[I]t might well be said that one's education is not complete without a study of comparative religion or the history of religion and its relationship to the advancement of civilization." (quoting *Schempp*, 374 U.S. at 255)); *Crockett v. Sorenson*, 568 F. Supp. 1422, 1429 (W.D. Va. 1983) ("Secular education imposes immediate demands that the student have a good knowledge of the Bible[.]"); *Wiley v. Franklin*, 468 F. Supp. 133, 150 (E.D. Tenn. 1979) ("To ignore the role of the Bible in the vast area of secular subjects . . . is to ignore a keystone in the building of an arch, at least insofar as Western history, values, and culture are concerned.").

The West Virginia Attorney General likewise formally opine that biblical curricula are constitutional when offered within certain guidelines.  [Doc. 25-3].

Given that courts have repeatedly held that even *compulsory* religious education is not precluded by the Establishment Clause, Plaintiffs can hardly argue that their simple awareness that a public school offers an "opt in" biblical study curriculum violates any "clearly established" right.

The FAC establishes that the BITS program was voluntary.[11]  The schools sent permission slips to parents prior to holding BITS classes. FAC ¶35.  If a parent did not return the signed permission slip, like Ms. Deal in this case, the child did not participate.  *Id*. at ¶¶ 38-44.  Children who did not participate were sent to the school library or computer lab where they were allowed to read a book of their choosing.  *Id*. at ¶¶ 42-44.  There are no allegations that any school employee proselytized or harassed Jessica for not participating in the BITS program.  To the extent that Plaintiffs rely on the content of the curriculum, such a fact- and context-based inquiry is precisely the type of analysis that is suited for lawyers and judges, not school administrators.  *See Wood*, 915 F.3d at 315 ("academic freedom would not long survive in an environment in which courts micromanage school curricula").

For these reasons, Superintendent Akers is entitled to qualified immunity for the allegations set forth in the First Amended Complaint.

### C.  Mercer County Schools is not a final policymaking authority

Under 42 USC § 1983, a municipality may not be subject to liability under a theory of *respondeat superior*.  Instead, a plaintiff must show that the violation was made by a final policy

---

[11] Although Plaintiffs cite cases to indicate that voluntariness does not preclude an Establishment Clause violation, those cases involve ostensibly religious exercises. *See, e.g.*, *Lee v. Weisman*, 505 U.S. 577 (1992) (involving prayer); *School Dist. of Abington Twp., Pa. v. Schempp*. 374 U.S. 203, 224 (1963) (bible reading and prayer).Those cases therefore do not "clearly establish" that a voluntary curriculum studying religious texts is unconstitutional.

making official. *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999) ("Plaintiffs seeking to impose liability on a municipality under § 1983 must, therefore, adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that the policy proximately caused the deprivation of their rights." (quoting *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994))). The Fourth Circuit has held this rule is equally applicable to school boards. *See Barrett v. Bd. of Educ. of Johnson Cty.*, 590 F. App'x 208, 210 (4th Cir. 2014) ("The Board, for purposes of a civil rights lawsuit under § 1983, is indistinguishable from a municipality." (citing *Riddick v. Sch. Bd. of City of Portsmouth*, 238 F.3d 518, 522 n.3 (4th Cir. 2000)).

The determination of who has final policymaking authority is one of state law. "Under West Virginia law, the final policy making authority for a school district resides with the members of its county board of education." *Carr-Lambert v. Grant Cnty. Bd. of Educ.*, No. 2:09-cv-61, 2009 U.S. Dist. LEXIS 58194 (N.D.W. Va July 2, 2009); s*ee also* FAC ¶¶ 90-92. Thus final policymaking authority lies with the Mercer County Board of Education, not with Mercer County Schools. There being no independent cause of action against Mercer County Schools, Mercer County Schools should be dismissed from this lawsuit.

### D.  *Plaintiffs' claims are barred by the Statute of Limitations*

A claim brought pursuant to § 1983 is subject to the statute of limitations for a personal injury action in the state it is brought. *Bell v. Bd. of Educ.*, 290 F. Supp. 2d 701, 709 (S.D.W. Va. 2003). In West Virginia, the statute of limitations for a § 1983 claim is two years. *Id.*

The date of accrual of a § 1983 action is a question of federal law. *See Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996). Under federal law, a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry

will reveal his cause of action." *Id*. The statute of limitations will toll if the alleged injury results

from a "continuing violation." *Hall v. City of Clarksburg*, No. 1:14-CV-90, 2016 U.S. Dist. LEXIS

135183, at *11 (N.D.W. Va. 2016). However, "a continuing violation is occasioned by continual

unlawful acts, not continual ill effects from an original violation." *Miller v. King George Cty.*, 277

F. App'x 297, 299 (4th Cir. 2008) (quoting *Nat'l Advert. Co. v. Raleigh*, 947 F.2d 1158, 1161 (4th

Cir. 1991).

Where, as here, the alleged violation is legislative, courts in the Fourth Circuit will consider

two factors in determining whether the plaintiff has alleged a continuing violation: (1) the harm to

the plaintiff and whether that harm has been compounded by further governmental actions and (2)

whether unfairness results from finding the continuing wrong exception inapplicable. *Miller*, 277

F. App'x at 299. Where the alleged harm was foreseeable and ascertainable from the moment the

cause of action accrued, the Fourth Circuit will not toll the statute of limitations. *Id*.

Here, the claimed injury, Elizabeth Deal and Jessica Roe were aware of the BITS program

and Jessica Roe's exposure to it no later than 2013. FAC at ¶ 35 (stating that Mercer County sent

home permission slips for the BITS program "[w]hen Jessica Roe began first grade"). Ms. Deal

was aware of the nature of the program at about that time. FAC ¶¶ 37-38.This, at a minimum,

created a duty for Elizabeth Deal to inquire as to the nature of the BITS program in 2013. The

alleged injury, a sense of alienation, was thus incurred by Deal and Roe no later than in 2013.

FAC ¶¶ 35-36. Plaintiffs do not allege facts that would support a finding that any subsequent acts

of Mercer County Schools or the School Board compounded Plaintiffs' sense of alienation apart

from the existence of the BITS program.[12]

---

[12]To the extent that Plaintiffs intend to argue that Jessica initially being placed in a cloakroom
during BITS was a subsequent act that tolls the statute of limitation, this incident also occurred
more than two years before the suit was filed. Under the facts pleaded, Jessica attend first grade

Similarly, there is no unfairness in not letting this case go forward.  Ms. Deal and her daughter did not join this lawsuit until well after Jessica had stopped attending Mercer County schools, and at least three years after she was made aware of the BITS program.  *See Miller*, 277 F.3d at 300 ("if any unfairness could occur in this case, it would result from permitting the Millers to challenge the 2001 finding that they were in violation of zoning laws nearly six years after notice of the violation.")

Under the facts stated in the complaint, Ms. Deal's and Jessica's cause of action accrued sometime in 2013, at least three years before this suit was filed.  Even read in its best light, the FAC does not allege any damages that were unforeseeable or otherwise not ascertainable at any point beyond 2014. Because Plaintiffs did not file suit within two years of accrual of the cause of action and no subsequent acts compounding the violation occurred within the limitations period, Plaintiffs claims are barred by the statute of limitations.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this case as moot.  If the Court determines that the case is not moot, then the Court should dismiss all claims as barred by the two-year statute of limitations, dismiss the complaint against Dr. Akers and Mercer County Schools for failure to state a claim, and dismiss the complaint against Dr. Akers under the doctrine of qualified immunity.

---

during the 2013-2014 school year. The FAC indicates that these events happened no later than 2014.  FAC ¶¶ 39-40 ("Jessica was removed from her *first grade* classroom during Bible in the Schools classes") (emphasis added).  Therefore, assuming arguendo these events toll the statute of limitations, the claims are still time-barred.

MERCER COUNTY BOARD
OF EDUCATION;
MERCER COUNTY SCHOOLS;
and DEBORAH S. AKERS, in her
individual capacity,
By Counsel.

/s/ Kermit J. Moore
Kermit J. Moore (WV State Bar No. 2611)
W. Blake Belcher (WV State Bar No. 12212)
Brewster, Morhous, Cameron, Caruth,
        Moore, Kersey & Stafford, PLLC
418 Bland Street
Post Office Box 529
Bluefield, West Virginia 24701
(304) 325-9177
(304) 324-0362 *fax*

## CERTIFICATE OF SERVICE

I, Kermit J. Moore, counsel for Defendants, hereby certify that on the 10th day of April, 2019, I electronically filed the preceding MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MERCER COUNTY BOARD OF EDUCATION, MERCER COUNTY SCHOOLS, AND DR. DEBORAH AKERS'S MOTION TO DISMISS with the Clerk of this Court using the CM/ECF system, which, in turn, will send notification of such filing to the following CM/ECF participants, counsel of record:

Marcus B. Schneider, Esquire
Steele Schneider
428 Forbes Avenue, Suite 700
Pittsburgh, Pennsylvania 15219

Kristina T. Whiteaker, Esquire
David L. Grubb, Esquire
The Grubb Law Group
1114 Kanawha Boulevard, East
Charleston, West Virginia 25301

Patrick C. Elliott, Esquire
Christopher Line, Esquire
Freedom From Religion Foundation
10 North Henry Street
Madison, Wisconsin 53703

Hiram S. Sasser, III, Esquire
Jeremiah G. Dys, Esquire
Reed N. Smith, Esquire
First Liberty Institute
2001 West Plano Parkway, Suite 1600
Plano, Texas 75075

David R. Dorey, Esquire
O'Melveny & Myers LLP
1625 Eye Street, N.W.
Washington, D.C. 20006

/s/ Kermit J. Moore

22