IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

| | |
|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC., et al., <br><br> *Plaintiffs,* <br><br> vs. <br><br> MERCER COUNTY BOARD OF EDUCATION, et al., <br><br> *Defendants.* | Civil Action No. 1:17-cv-00642 <br><br> Hon. David A. Faber |

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION
FOR LEAVE TO CONDUCT LIMITED DISCOVERY**

### Introduction

Throughout this case, Defendants have routinely engaged in self-serving conduct designed to avoid an adverse decision holding that Mercer County Schools' 75-year Bible in the Schools program ("BITS") is unconstitutional. Defendants first "suspended" BITS *during briefing* on Defendants' original motion to dismiss in an effort to strengthen their argument that Plaintiffs lacked standing. And as the Fourth Circuit observed, this suspension was "dubiously" portrayed as a "routine review" of BITS, despite the program's long tenure and numerous public comments reflecting an intention to return the program in the future. No contrary public comments have ever been made.

Yet the stated plans of returning the program apparently changed immediately after the Fourth Circuit ruled Plaintiffs' claims are justiciable in spite of Defendants' self-serving suspension of the program. At that time, the Mercer County Board of Education

1

(the "Board") narrowly passed a resolution that purports to dissolve BITS and disavow any intention of returning the program, although the Board is free to do so at any time. This resolution then featured prominently in Defendants' unsuccessful Petition for Rehearing to the Fourth Circuit filed soon after the passage of the resolution.

Most significantly for purposes of this motion, Defendants are asking this Court to dismiss the case as moot because of the passage of this resolution. But the same evidence that the Fourth Circuit found casted doubt on the sincerity of Defendants' "suspension" of BITS, calls their purported termination of BITS into equal question. This evidence that undercuts Defendants' attempts to moot this case through voluntary cessation is derived entirely from public comment and statements of Defendants in this litigation. Plaintiffs have never had an opportunity to conduct discovery to investigate what has happened outside the view of the public and to uncover facts that may provide further reason for the Court to doubt whether BITS is certain to never return.

To meet their "heavy" burden under the voluntary cessation doctrine, Defendants must demonstrate with absolute clarity that this is the case. Determining whether this high evidentiary burden has been met requires a fact-intensive analysis. Plaintiffs submit that this analysis can only occur with a more robust factual picture than Defendants' public comments and self-serving actions.

To have a full factual record upon which to undertake its mootness analysis, the Court must permit Plaintiffs the opportunity to conduct limited discovery on the facts that bear on the mootness issue. Plaintiffs must explore the facts and circumstances surrounding the suspension and review of BITS, the findings produced by the BITS review, and Defendants' reasons for enacting the January 3, 2019 resolution. A

defendant's conduct must be questioned where adverse court rulings and arguments advanced by a plaintiff serve as the catalyst for ever-shifting conduct designed to avoid any adverse ruling on the merits of a case. Limited discovery on these issues relating to the Court's mootness inquiry will allow the Court to undertake its review through the prism of the adversarial process—not Defendants' uncontested rendition of the facts.

### Relevant Factual Background

On May 23, 2017, just one day before Defendants' filed their Reply Brief in support of their original motion to dismiss (and less than two weeks after Plaintiffs' filed their Response Brief in Opposition), the Board voted to "suspend the teaching of [BITS] in all Mercer County Schools for 'at least a year.'" ECF No. 30, 4 n.3. This self-serving suspension of the program was then used by Defendants to argue how "speculative" Plaintiffs' injuries were when the case was filed. Defendants went on to present that the purpose for the suspension was to allow for a "thorough review of the curriculum by the Board and by community members and religious leaders along with [their] teachers." *Id.* at 5 (internal citations omitted). The uncertain outcome of this purported "review" was argued as another point in Defendants' favor as to the speculative nature of future BITS curriculum. *Id.* Eventually, Defendants would use these "factual developments" to argue that Plaintiffs' claims were unripe and moot. *See Deal v. Mercer County Board of Education*, 911 F.3d 183, 191-92 (4th Cir. 2018).

Of course the Fourth Circuit found that the factual record surrounding the BITS suspension rendered these prior mootness arguments "meritless." *Id.* at 191. Specifically, the Fourth Circuit held that Defendants' suggestion that the suspension was part of a regular review process to be "dubious" in light of its long history. *Id.* The Court further

3

took issue with the import of the suspension based upon public comments made by Defendants' representatives during the litigation and after the suspension. *Id.* at 192. These public comments included remarks that the County "was 'still vigorously contesting' this suit and 'fighting' to retain the BITS Program."[1] *Id.*

The circumstances surrounding the January 3, 2019 "termination" of BITS by Board resolution are similar to those surrounding Defendants' prior suspension of the program. The resolution occurred approximately two weeks after the Fourth Circuit issued its decision confirming Plaintiffs could go forward with their claims. Making it even clearer that the resolution was in response to the Fourth Circuit's adverse ruling, the resolution was adopted just *one day* after Defendants requested additional time to file a petition seeking rehearing. The resolution itself was considered in a *special meeting* of the Board and was passed by a 3-2 vote. Exhibit "D." In addition, there is nothing in the record presented by Defendants or in media accounts surrounding the resolution that suggest the hastily-called special meeting was announced to the public.

### Argument

Defendants' Motion to Dismiss presents four arguments: (1) that the case is moot; (2) that Defendant Akers is entitled to qualified immunity; (3) that Mercer County Schools is not a final policymaking authority; and (4) that Plaintiffs' claims are barred by the applicable statute of limitations. Only the mootness argument and the statute of limitations arguments stand to be dispositive of the entire case, but as discussed below, Defendants' statute of limitations arguments clearly fail based upon the Fourth Circuit's

---

[1] Additional public comments cutting against the veracity of Defendants' claims of suspension have also been made and are included in Exhibit "A," counsel's declaration as to discovery required to respond to Defendants' latest mootness argument.

prior decision in this very case. Therefore, the only fully dispositive matter raised by Defendants' Motion to Dismiss is their mootness argument.

This mootness argument presents factual issues outside the averments of Plaintiffs' Amended Complaint. It is supported by a declaration of the Board president and is based upon the recently-passed Board resolution purporting to terminate BITS. ECF 79, 79-1. The mootness argument, thus, hinges upon the application of the voluntary cessation doctrine to Defendants' recent resolution concerning BITS. This doctrine requires Defendants to meet the "heavy burden" of making it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Wall v. Wade*, 741 F.3d 492, 497 (4th Cir. 2014) (citations omitted).

Plaintiffs request the opportunity to conduct limited discovery so that this Court—and any appellate court reviewing the matter—can consider whether Defendants meet this high standard with a full factual record. The Court has the discretion to grant Plaintiffs' request and should do so in light of the factual nature of the mootness inquiry that must be undertaken to consider Defendants' Motion to Dismiss. Plaintiffs' request for discovery is further supported by the already-known facts surrounding Defendant's self-serving attempts to moot this case, which establish a reasonable probability that the requested discovery may lead to evidence further casting doubt on Defendants' ability to meet the voluntary cessation burden.

I. **The Court has the discretion to grant Plaintiffs' request.**

Discovery is available to plaintiffs where, as here, factual issues arise that call a court's jurisdiction into question. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978). The standards governing a plaintiff's entitlement to discovery related to

jurisdiction depend upon the form of the defendant's challenge. Defendants in this case challenge jurisdiction based upon extra-complaint facts presented in the context of a Rule 12(b)(6) motion. In such situations, courts must permit a plaintiff the opportunity to conduct discovery and convert the challenge to a summary judgment challenge governed by Rule 56 of the Federal Rules of Civil Procedure. Similarly, where a defendant raises a "factual challenge" to jurisdiction under Rule 12(b)(1), discovery is also appropriate. In either case, this Court has the authority to and should grant Plaintiff's request to conduct discovery on the issue of mootness.

### A. Before ruling on Defendants' Rule 12(b)(6) motion relying upon extra-complaint evidence, Plaintiffs must be given an opportunity to conduct jurisdictional discovery.

Defendants' mootness argument is expressly presented in the context of a Rule 12(b)(6) motion and is supported by facts outside Plaintiffs' Amended Complaint. ECF 79, 79-1. Rule 12 specifies that such motions must be treated as motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d). Rule 12(d) further provides that, in such situations, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*

Courts in the Fourth Circuit have interpreted this requirement to include providing a plaintiff with a "reasonable opportunity for discovery." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (quoting *Johnson v. RAC Corp.*, 491 F.2d 510, 515 (4th Cir. 1974). Indeed, where a plaintiff is not given an opportunity to conduct discovery, a court may not convert a Rule 12(b)(6) motion to a Rule 56 motion to consider extra-complaint evidence. *Wall*, 761 F.2d at 177-78 ("Because [plaintiff] was not afforded an opportunity for reasonable discovery, the district court's treatment of the motion to dismiss as a

motion for summary judgment was an abuse of discretion").

A party's right to discovery before adjudication of a summary judgment motion is clear. "[S]ummary judgment is appropriate only after adequate time for discovery." *Greater Baltimore Ctr. For Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 280 (4th Cir. 2013) (internal quotations and citation omitted). Thus, a "district court must refuse summary judgment where the nonmoving party has not had the opportunity to discover information that is essential to its opposition." *Id.* (internal quotations and symbols and citations omitted). Moreover, Rule 56(d) itself provides that where a nonmoving party demonstrates through declaration that it cannot present facts essential to justify its opposition to a motion for summary judgment, the court may allow the party time to take discovery. Fed. R. Civ. P. 56(d)(2).

With this rule in mind, Plaintiffs have supported their request for leave to conduct limited discovery with the affidavit of counsel attached to this brief as Exhibit "A." This affidavit sets forth the subjects on which Plaintiffs anticipate taking discovery, which will allow them to present this Court with a fully-developed factual record on the issue of mootness. The subjects of and need for discovery are also addressed in Section III below. In light of the Plaintiffs' need for discovery on the issue of mootness, Defendants' Rule 12(b)(6) motion relying upon extra-complaint facts may not be considered as a motion for summary judgment until Plaintiffs are given the requested opportunity for discovery.

### B. If Defendants attempt to recharacterize their Motion to Dismiss as a factual challenge to jurisdiction under Rule 12(b)(1), the Court has the discretion to allow Plaintiffs to conduct the requested discovery.

Although Defendants raise their mootness argument in the context of their Rule 12(b)(6) motion, they may attempt to claim that the argument is a factual challenge under

Rule 12(b)(1). In such situations, where a defendant challenges the veracity of facts underpinning jurisdiction or offers its own facts to challenge jurisdiction, the court may conduct evidentiary proceedings and/or provide a plaintiff with the opportunity to conduct jurisdictional discovery. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) ("[W]hen the defendant challenges the veracity of the facts underpinning subject matter jurisdiction, the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts"); *Estate of Alford v. Fuji Heavy Indus., Ltd*, No. CV 3:15-16449, 2016 WL 756489, at *1 (S.D. W. Va. Feb. 25, 2016) (holding that the court has the power to grant discovery on the issue of personal jurisdiction raised by a motion to dismiss); *McLaughlin v. McPhail*, 707 F.2d 800, 806 (4th Cir. 1983) (affirming district court conclusion that "limited depositions may be warranted to explore jurisdictional facts in some cases"); *Rich v. KIS California, Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988) (holding that unless a plaintiff's claim is clearly frivolous, jurisdictional discovery should be permitted); *Douglas v. United States*, 814 F.3d 1268, 1274-75 (11th Cir. 2016) (holding that in a factual challenge under Rule 12(b)(1), the district court "*must* give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss") (citations omitted); *Laub v. U.S. Dept. of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) ("[D]iscovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.") (citation omitted).

The District Court for the Western District of Washington recently granted plaintiffs requests for limited discovery on the issue of mootness under facts strikingly

similar those presented here. *Does v. Trump*, 328 F.Supp.3d 1185, 1198-99 (W.D. Wa. July 27, 2018). The case involved challenges to the various executive orders and presidential proclamations restricting entry into the United States. *Id.* at 1189-92. On appeal, the defendants argued that the case had become moot because of their compliance with injunctions related to the executive orders at issue. *Id.* at 1195. The Ninth Circuit remanded the case to the district court for consideration of mootness in the first place. *Id.* Once back before the district court, the defendants unsuccessfully moved to stay the proceedings and ultimately filed a motion to dismiss the case based upon its purported mootness. *Id.* Plaintiffs then sought jurisdictional discovery on the issue of mootness to develop facts it believed would reflect that defendants were not in fact complying with the injunctions addressing the executive orders at issue. *Id.*

The district court granted plaintiffs' request for jurisdictional discovery on the issue of mootness. *Id.* at 1201. The court held that courts "ordinarily should grant discovery" requested to respond to a motion to dismiss on jurisdictional grounds "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.* at 1196 (quoting *Laub*, 342 F.3d at 1093). The court undertook review of the evidence pointed to by plaintiffs to determine whether the evidence suggested discovery would potentially lead to evidence relevant to the court's mootness consideration. *Id.* at 1199. In granting plaintiffs' request for jurisdictional discovery, the court determined that the evidence identified by plaintiffs showed that the facts bearing on the court's jurisdiction were controverted, requiring a more satisfactory showing of facts, and that the evidence established a "'reasonable probability' that jurisdictional discovery could alter the outcome of the mootness

9

question." *Id.* at 1199-1200. Because the court found jurisdictional discovery to be proper, it denied the pending motion to dismiss on the basis of mootness without prejudice so that discovery could be conducted. *Id.* at 1202.

To the extent the Court treats Defendants' mootness argument as a factual challenge under Rule 12(b)(1), the Court should hold similarly in this case. The evidentiary record here, constructed merely of public comments and statements in this litigation, suggests Defendants' attempts at "cessation" are nothing more than litigation tactics, designed to avoid an adverse ruling by the Court. In light of the evidence suggesting an intention of returning BITS while it was suspended, the Court should permit discovery so that it may consider Defendants' mootness challenge with a complete factual record.

## II. The Court's analysis of Defendants' mootness arguments will be fact-intensive.

The mootness doctrine ensures that a case remains "live" throughout its life. *Pashby v. Delia*, 709 F.3d 307, 316 (4th Cir. 2013). To prove a case has become moot in the voluntary cessation context, defendants bear the "heavy burden of persuading" a court that "subsequent events [make] it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Wall*, 741 F.3d 492, 497 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000)). The doctrine imposes this burden to prevent "a manipulative litigant from immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and then reinstating it immediately after." *Porter v. Clarke*, 852 F.3d 358, 364 (4th Cir. 2017).

As the Fourth Circuit's prior decision in this case demonstrates, determining whether a defendant has met this heavy burden requires the evaluation of facts and the

10

assessment of credibility. *See Deal v. Mercer County Board of Education*, 911 F.3d 183, 191-92 (4th Cir. 2018). The Fourth Circuit compared the Mercer County Parties' claims that BITS had been suspended and their counsel's claims that the program would not return against other factual evidence in the record, including contradictory statements of the Mercer County Parties that they were "still vigorously contesting" the lawsuit. *Id.* Passing on the credibility of the various contentions of the Mercer County Parties related to voluntary cessation, the Fourth Circuit found certain contentions "dubious" and others to be "undercut" by surrounding evidence. *Id.*

Several other courts have given consideration to the factual circumstances surrounding the cessation of a challenged practice when determining whether a case has become moot. For instance, several courts have found that the heavy burden imposed by the voluntary cessation doctrine is not met where the cessation of conduct occurs in response to an adverse court ruling. *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 288 (2000); *Ne. Fla. Chapter of Associated Gen. Contractors of Am. V. City of Jacksonville*, 508 U.S. 656, 661-62 (1993); *Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 903 F.3d 829, 840 (9th Cir. 2018) (citations omitted) ("[W]here a change in the law is prompted by an adverse district court ruling, an appeal is generally not moot."); *Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1329, 1333 (11th Cir. 2005) (per curiam). Other courts have found the timing of cessation to be material, even where it is not in direct response to an adverse ruling. *Burns v. PA Dep't of Correction*, 544 F.3d 279, 284 (3d Cir. 2008) ("[T]he Department of Corrections' assurances were provided exceedingly late in the game. This by no means establishes that it would resume pursuit of the assessment at the conclusion of litigation. But we are more skeptical of voluntary changes

that have been made long after litigation has commenced."); *see also Harrell v. The Fla. Bar*, 608 F.3d 1241, 1266 (11th Cir. 2010) (asserting that the "timing and content" of a voluntary decision to cease challenged conduct are critical to the mootness question). The circumstances surrounding the cessation of challenged conduct is also relevant to the analysis. *See Harrell v. The Fla. Bar*, 608 F.3d 1241, 1267 (11th Cir. 2010) ("First of all, the Board acted in secrecy, meeting behind closed doors and, notably, failing to disclose any basis for its decision. As a result, we have no idea whether the Board's decision was "well-reasoned" and therefore likely to endure.").

### III. Discovery is likely to aid the Court in its factual analysis of mootness.

The limited facts available in this case—without the benefit of any discovery—raise questions about the credibility of Mercer County Parties' claims that the BITS program has been terminated and will not return. The timing of the termination and the apparently secret and emergency conditions under which it occurred must be explored. And investigation by Plaintiffs into the reasons for these actions may lead to additional evidence undercutting Defendants' mootness argument.

In addition, the Defendants' most recent actions of termination occurred against the backdrop of Defendants' prior attempt to moot the case by suspending the program. The Fourth Circuit already found that the timing of that suspension and the comments made about the suspension and plans to return the BITS program during the suspension undercut Defendants' attempts to moot the case through voluntary cessation. Again, these findings were based only upon public comments and statements made in this case. Further investigation into these matters may lead to additional evidence that the Court should consider in evaluating whether Defendants' have met their burden under the

voluntary cessation doctrine.

Discovery will also allow the Court to consider these and other potentially critical facts through more reliable means such as written discovery responses and sworn testimony of the material witnesses who have been subjected to cross-examination. Rather than conjecture as to Defendants' motivations and credibility based upon a one-sided presentation of facts on these issues, the Court will have the benefit of a fully developed record. Whether considered on that record or as a prelude to an evidentiary hearing on the matter, these fruits of discovery will assist the Court in resolving the controverted issues relevant to Defendants' mootness arguments.

### IV. The Court should defer consideration of Defendants' Motion to Dismiss until jurisdictional discovery is completed.

Defendants' other arguments in support of their Motion to Dismiss do not require adjudication before the Court permits Plaintiffs the opportunity to conduct jurisdictional discovery. Unlike the other three arguments raised, Defendants' mootness argument presents a jurisdictional issue, which should be considered by the Court before other substantive issues; if the Court lacks jurisdiction, it need not consider Defendants' substantive arguments. Also unlike the dispositive mootness issue, Defendants' other arguments in support of their Motion to Dismiss are either not fully dispositive because they deal with specific defendants (namely Defendant Akers and Defendant Mercer County Schools) or lacking merit.[2]

---

[2] While Defendants' statute of limitations arguments could result in the dismissal of Plaintiffs' entire case, these arguments fail outright because they misunderstand the prior decision of the Fourth Circuit in this case. Defendants' statute of limitations arguments are premised upon the position that Plaintiffs' injuries occurred in the past, but the Fourth Circuit has already recognized in this case that the Amended Complaint alleges two forms of injuries *ongoing* at the time the case was filed. *Deal*, 911 F.3d at 188 (holding

By ordering discovery to occur before adjudication of the other issues raised in Defendants' Motion to Dismiss, the Court will ensure the most efficient handling of these matters at no prejudice to Defendants. The parties will only be involved in the discovery process to the extent they possess information relevant to Defendants' mootness arguments—which is the only topic on which discovery will occur at this time. Even Defendants Akers and Mercer County Schools, who seek dismissal of the claims filed against them specifically, will not be burdened by a deferral of consideration of Defendants' Motion to Dismiss until after jurisdictional discovery has been completed. If they possess information relevant to mootness, they would be subject to deposition and involvement in discovery regardless of whether they are parties to the case.

### Conclusion

In light of the unique facts of this case, jurisdictional discovery on the issue of mootness and Defendants' attempts to engage in voluntary cessation is necessary. Plaintiffs request a 60-day period within which to conduct discovery on the issues related to Defendants' mootness defense.

This process will aid the Court in its consideration of Defendants' Motion to Dismiss. The highlighted information already available demonstrates a strong possibility that Defendants are engaging in conduct that could cut against a finding that they have

---

Plaintiffs allege two "actual, ongoing injuries: (1) near-daily avoidance of contact with an alleged state-sponsored religious exercise, and (2) enduring feelings of marginalization and exclusion resulting therefrom"). Just as Defendants' failed to understand Plaintiffs' ongoing injuries when they persisted in arguing that Plaintiffs lacked standing, their misconception of the nature of Plaintiffs' injuries now presents itself in the form of this newly-raised statute of limitations argument. Because any statute of limitations arguments necessarily fail in light of the alleged ongoing injuries Plaintiffs are enduring, the Court need not be concerned that the argument presents an alternative path to a complete dismissal of this case.

14

met their burden to demonstrate with "absolutely clarity" that BITS will never return. Beyond this information, Plaintiffs have highlighted other evidence suggesting a reasonable possibility that jurisdictional discovery will yield information relevant to the Court's consideration of Defendants' mootness defense, similar to the evidence the Fourth Circuit found important in previously rejecting Defendants' earlier attempts to moot the case. The requested jurisdictional discovery will help to ensure that the Court is presented with all of these material facts and that any future appellate review of this Court's decision can be undertaken with a complete factual record.

Respectfully submitted,

*/s/ Marcus B. Schneider, Esquire*
Marcus B. Schneider, Esquire
W.V. I.D. No. 12814
STEELE SCHNEIDER
428 Forbes Avenue, Suite 700
Pittsburgh, PA 15219
(412) 235-7682
(412) 235-7693/facsimile
marcschneider@steeleschneider.com

## CERTIFICATE OF SERVICE

    I hereby certify that on April 24, 2019, the foregoing **BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY** was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic case filing system and constitutes service of this filing under Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure. Parties may access this filing through the Court's ECF system.

                                                  */s/ Marcus B. Schneider, Esquire*
                                                  Marcus B. Schneider, Esquire