IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

FREEDOM FROM RELIGION
FOUNDATION, INC. et al.,

    **Plaintiffs,**

v.                               **CIVIL ACTION NO. 1:17-00642**

MERCER COUNTY BOARD OF
EDUCATION et al.,

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

Pending before the court is a motion to dismiss filed by defendants Mercer County Board of Education, Mercer County Schools, and Deborah Akers. (ECF No. 79). For the reasons that follow, that motion is **GRANTED** insofar as it seeks dismissal of plaintiff's claim for injunctive relief.

### I.  BACKGROUND

This civil action arises out of a longstanding Bible in the Schools ("BITS") program previously administered in many of the elementary and middle schools in Mercer County, West Virginia. Plaintiffs, Freedom From Religion Foundation, Inc., Jane Doe and her child Jamie Doe, and Elizabeth Deal and her child Jessica Roe, allege the BITS program violates the Establishment Clause and request an injunction prohibiting defendants from administering BITS in the future. Elizabeth Deal and Jessica Roe also seek nominal damages.

**A. Bible in the Schools (BITS)**

Over 70 years ago, elementary and middle school students began participating in a public school Bible curriculum in Mercer County, West Virginia. <u>See</u> First Amended Complaint ("FAC") ¶ 19. In 1986, the Mercer County Board of Education ("the Board" or "BOE") assumed responsibility for administering the BITS curriculum. <u>See</u> <u>id.</u> at ¶ 22. A nonprofit organization, Bluefield Bible Study Fund, Inc., financed the program's expenses. <u>See</u> <u>id.</u> at ¶ 24. According to the First Amended Complaint, "[t]he Mercer County Board of Education has taken on all responsibilities for the program except financing." <u>Id.</u> at ¶ 23.

Over her 25-year tenure, Deborah Akers, Superintendent of Mercer County Schools, allegedly implemented all Mercer County School policies and programs, including BITS. <u>See</u> <u>id.</u> at ¶¶ 97-98, 106. Defendant, Rebecca Peery, principal of Memorial Primary School was allegedly responsible for school policies and instruction at Memorial Primary School, located in Mercer County (where the plaintiff Jessica Roe previously attended), including approving BITS lessons pursuant to Mercer County Schools' Policy I-45. <u>See</u> <u>id.</u> at ¶¶ 99-103. Mercer County School Policy I-45

directs teachers to develop lesson plans and submit them to their
school principals for review.  See id. at ¶¶ 101, 106.

**B. Plaintiffs**

The First Amended Complaint, filed on March 28, 2017,
included five (5) plaintiffs:  two parents, their two children,
and Freedom from Religion Foundation ("FFRF").  Plaintiff
parents, "Jane Doe" and Elizabeth Deal sued individually and on
behalf of their children "Jamie Doe" and "Jessica Roe,"
respectively.  See id. at ¶¶ 8-17.  Jane Doe is the only
individual plaintiff who is a member of FFRF, a national group
that "defends the constitutional principle of separation between
state and church and educates the public about the views of non-
theists."  Id. at ¶ 8.

On the date of suit, January 18, 2017, Jamie Doe, daughter
of Jane Doe, attended a Mercer County school as a kindergarten
student where BITS was offered to first-grade students.  See id.
at ¶¶ 11, 29.  Jane Doe alleged her intention to enroll her
daughter in the same school the following year.  See id. at ¶ 29.
Jane Doe brought the instant lawsuit to escape "two untenable
choices . . . either [Jamie Doe will] be forced to attend bible
indoctrination classes against the wishes and conscience of Jane
Doe, or Jamie Doe will be the only child or one of only a few

children who do not participate [in BITS]. . . [and thus] subject[] Jamie to the risk of ostracism from peers and even school staff."  Id. at ¶ 33.

From 2012 to 2016 (kindergarten to third-grade), Jessica Roe, daughter of Elizabeth Deal, attended Memorial Primary School in Mercer County, but her mother declined to allow her to participate in the program.  See id. at ¶¶ 34-38.  Roe was allegedly "harassed by other students" and "felt excluded" because she did not participate in BITS.  Id. at ¶¶ 45, 46.  In August 2016, for her fourth-grade year and before the lawsuit was filed, Jessica Roe transferred to a "neighboring school" that did not sponsor BITS.  Id. at ¶ 48.  According to Elizabeth Deal, the BITS program was a "major reason" for Jessica's transfer.  Id.

**C. Suspension of BITS**

On May 23, 2017, the Mercer County Board of Education voted to suspend the BITS program for "at least a year."  See ECF No. 30-1; Deposition of Elijah Paul Hodges, Jr., September 25, 2019, at 14-18 (hereinafter "Hodges Depo. at _____").  The Board did so via approval of Board Memo #344 which was a memorandum from Akers to the Board dated May 23, 2017.  See Exhibit P-4 to Hodges Depo. That memorandum provided in pertinent part:

> Adopting a curriculum for the secondary schools
> sets the stage for us to consider reviewing our

4

elementary curriculum.  The review cycle for state
required courses in the elementary schools is six
(6) years, so it makes sense to review our
elective elementary Bible curriculum at this time.

Since the Bible class is an elective, I would like
to include community members and religious leaders
along with our teachers in this process.  In order
to conduct a thorough review, we need to allow at
least a year to complete the task.  Therefore, I
am recommending that we suspend the elementary
Bible classes until this review is completed.

Id.  On April 11, 2017, the Mercer County Board of Education

terminated the employment of all BITS teachers.  See ECF No. 30-1

at ¶ 4.  At a hearing on June 19, 2017, counsel for defendants

assured the court during oral argument that the BITS curriculum

of which plaintiffs complained did not exist and would not come

back.  However, in a newspaper article published on April 7,

2017, Dr. Akers reportedly emphasized "Mercer County Schools is

continuing its efforts to keep the Bible in the Schools program,"

although a timetable for a new BITS program had not been

established.  See ECF No. 30-3.  According to Dr. Akers,

defendants were "vigorously contesting" the lawsuit.  Id. ("We

haven't stopped contesting it.  We're still fighting it.").

**D. Defendants' Motion to Dismiss**

Defendants, Mercer County Board of Education, Mercer County

Schools, and Deborah Akers filed a motion to dismiss and

accompanying memorandum on April 19, 2017, requesting a complete

dismissal of plaintiffs' claims on four grounds. See ECF No. 25.

The court granted defendants' motion to dismiss on standing and

ripeness grounds.

**E. Appeal**

Plaintiffs appealed the court's dismissal of their

complaint. On December 17, 2018, the appeals court reversed the

district court's decision to dismiss the complaint, finding that

plaintiffs did have standing and that dismissal based upon

ripeness was erroneous. See Deal v. Mercer County Bd. of Educ.,

911 F.3d 183, 186 (4th Cir. 2018). At oral argument, counsel for

defendants argued, for the first time, that plaintiffs' claims

were moot because of the suspension of the BITS program. See id.

at 191. The appeals court rejected defendants's argument that

the claims were now moot. See id. According to the court:

> A case becomes moot "when the issues presented are
> no longer `live' or the parties lack a legally
> cognizable interest in the outcome." Simmons v.
> United Mortg. & Loan Inv., LLC, 634 F.3d 754, 763
> (4th Cir. 2011) (internal quotation marks
> omitted).
>
> When a defendant voluntarily ceases a
> challenged program, however, the analysis requires
> additional rigor. In such a case, "[i]t is well
> settled that a defendant's voluntary cessation of
> a challenged practice does not deprive a federal
> court of its power to determine the legality of
> the practice." Laidlaw, 528 U.S. 189, 120 S. Ct.
> 693 (internal quotation marks omitted). Rather, a
> party asserting mootness bears a "heavy burden of

persuading" the court that "subsequent events
[make] it <u>absolutely clear</u> that the allegedly
wrongful behavior could not reasonably be expected
to recur." <u>Id.</u> (alteration omitted and emphasis
added).

* * *

The County has consistently described the
BITS program as "suspend[ed]," rather than
eliminated outright.  Indeed, the County has
characterized the suspension as part of a regular
review process, a dubious suggestion in view of
the program's uninterrupted, decades-long history.
<u>See</u> <u>Already, LLC v. Nike, Inc.</u>, 568 U.S. 85, 91,
133 S. Ct. 721, 184 L. Ed. 2d 553 (2013)
(explaining that the voluntary cessation exception
prevents a defendant from "engag[ing] in unlawful
conduct, stop[ping] when sued to have the case
declared moot, then pick[ing] up where he left
off").

Moreover, we have held that a defendant does
not meet its burden of demonstrating mootness when
it retains authority to "reassess" the challenged
policy "at any time." <u>Pashby</u>, 709 F.3d at 316.
Here, news reports submitted to the district court
by the County itself emphasized that the County
was "still vigorously contesting" this suit and
"fighting" to retain the BITS program.  Rather
than enhancing the County's case, these press
reports reveal the precise problem with relying on
a party's voluntary cessation of unconstitutional
activity to establish mootness.  Indeed, we have
routinely found such evidence insufficient.  <u>See</u>
<u>Porter</u>, 852 F.3d at 364-65 (collecting cases).

Nor do we find compelling the fact that BITS
teachers received a notice from the Mercer County
Board of Education that their employment might be
terminated.  To the extent this has persuasive
value, it is undercut by Superintendant Akers'
description of the notices as a "precautionary
measure" driven solely by this litigation and the

school district's "mandatory timelines" for
informing teachers of their ongoing employment
status.  Such equivocal evidence cannot save the
County's mootness claims.

In sum, the County has not carried its burden
of showing that subsequent events make it
"absolutely clear" that the suspended version of
the BITS program will not return in identical or
materially indistinguishable form.  Laidlaw, 528
U.S. at 189. 120 S. Ct. 693.  Appellants' current
claims are therefore not moot.

Id. at 191-92.  The court went on to say this its decision "does

not prevent the district court from addressing mootness in the

future if presented with that issue."  Id. at 192.  The case was

remanded to this court for further proceedings.

**F.  Post-Appeal**

On January 3, 2019, by a vote of 3 to 2, the Board

adopted a resolution terminating the BITS program.  That

resolution provided:

WHEREAS, the Board of Mercer County Schools (MCS)
suspended the Bible in the Schools (BITS) program
on May 23, 2017, pending a review of its
curriculum; and,

WHEREAS, the Board of MCS, on May 24, 2017,
initiated a thorough review of its options
concerning the BITS program, to last at least a
year, including evaluating of other curricula,
gauging community interest, and interviewing key
stakeholders; and,

WHEREAS, the Board of MCS terminated the
employment contracts of all BITS teachers for the
2017-2018 school year as of April 11, 2017, and

did not extend any contracts to BITS teachers for the 2018-2019 school year, while its thorough review was pending; and,

WHEREAS, the Board of MCS did not offer the BITS program at the elementary level during school years 2017-2018, 2018-2019 (including to the present); and,

WHEREAS, as a result of the review of the BITS program, it is clear to the Board of MCS that the BITS program is no longer compatible with the educational mission of MCS;

THEREFORE, We, the Board of Mercer County Schools, hereby RESOLVE that its schools will never offer or employ the BITS program in any of its schools.

Further RESOLVED: MCS does not now or in the future intend to offer a Bible elective curriculum in any of its elementary schools.

Further RESOLVED: MCS will not now or in the future employ teachers for the purpose of teaching a Bible elective curriculum in any of its elementary schools.

ECF No. 79-1. On April 10, 2019, defendants the BOE, Mercer County Schools, and Akers filed the instant motion to dismiss arguing that the case was now moot based upon the resolution terminating the BITS program. The court granted plaintiffs' motion for limited discovery on the issue of mootness.

Regarding review of the BITS program, Amanda Aliff, the Coordinator of Pupil Services for Mercer County Schools spearheaded a committee charged with reviewing the BITS program "to see if there was any way to deliver the curriculum in an

appropriate manner." Deposition of Amanda Aliff, September 25, 2019, at 12 (hereinafter "Aliff Depo. at _____"); see also Aliff Depo at 23-25. That committee, which Ms. Aliff described as "ad hoc", consisted of Aliff, several school members, as well as members of the community. See id. at 12. Ms. Aliff testified that she was instructed to form this committee by Dr. Akers, see id. at 26-27; see also Deposition of Dr. Deborah Akers, September 25, 2019, at 32 (hereinafter "Akers Depo. at _____"), and that it was formed in May of 2017. See Aliff Depo. at 31. According to Aliff, the committee was "looking at a way to offer the [BITS] program within the confines of the law." Id. at 27. Ms. Aliff testified that ultimately the committee concluded that the BITS program as it existed was "inappropriate" and that the committee "didn't have the expertise to revamp that program to make it appropriate." Id. at 28; see also id. at 30, 38. According to Ms. Aliff, the ad hoc committee came to its conclusion that the BITS program could not be salvaged pretty quickly after forming. See id. at 38.[1] Ms. Aliff ultimately conveyed the committee's

---

[1]  Q:  When did that committee reach its consensus that the elementary classes were not appropriate as they previously existed?

    A:  It happened pretty quickly after the committee was formed. I think we may have met twice, the first time just to talk about our task. The second time we determined that we didn't have the expertise.

    Q:  To revamp the program?

    A:  Yes.

conclusions to Dr. Akers.  See id. at 39-40.  Ms. Aliff testified that she did not have further discussions with Dr. Akers about the old elementary program, i.e., BITS "because the conclusions of the committee meant that the program would be gone."  Id. at 40.  To that end, the schools no longer are in possession of the tangible materials used in the BITS classes.  See id. at 41; Akers Depo. at 23 (Q: Do you know whether any of the [BITS] materials have been recycled for use in other classes?  A: I know they have not.).

According to Dr. Akers, the ad hoc committee's review of the BITS program was conducted in the summer of 2017.  See Akers Depo. at 61.  She could not recall when it was finished.  See id. On or about January 3, 2019, Dr. Akers drafted Board Memo #171 to the Board which presented the resolution terminating the BITS program.  See id. at 55-56.  Dr. Akers testified that she was in favor of the Board's adopting the resolution.  See id. at 56.  Of her belief that the Board was bound by the resolution, Dr. Akers testified:

---

Q:   And was it that second meeting - - would it be fair to
     say that the consensus among the committee members was
     that the program, as it existed, was not appropriate?
A:   Yes.

Id.

Q:  I was just trying to understand the meaning
    of what a Bible elective curriculum means as
    represented in this resolution.

A:  Well, as represent[ed] in this resolution,
    we're not going to be teaching a Bible
    elective in the elementary schools.  Period.

Q:  Right.  I understand that.  That's what this
    resolution says.  I guess I'm trying to
    understand - - let me ask this:  Would the
    BITS program be a Bible elective curriculum?

A:  No, not - - not - - we're not going to be
    offering that or any verison of that in the
    elementary schools.  I think you are
    confusing me a little bit.  So the only way I
    can say it is we are not going to be doing
    that.

Q:  The BITS program?

A:  Yes.

Q:  And then it goes on to say, "We're also not
    going to offer a Bible elective curriculum -
    -

A:  We're not going to offer Bible in the
    elementary schools.  Period.

Q:  Right.  So I'm just trying to understand what
    Bible elective curriculum means, and the best
    frame of reference I would have would be this
    Bible and Its Influence classes.  And so I'm
    just trying to understand, if by the Board's
    understanding of that language, would the
    Bible [and] Its Influence classes be part of
    what is being referred to?

A:  No.  No, what I was trying to say there was
    that is a curriculum.  You asked me a
    question about what did I mean.  That is a
    curriculum, but that's a middle school

curriculum.  There may be some elementary
curriculums out there, but whatever they are,
we're not going to offer any Bible elective
curriculum in the elementary schools.  That's
what that means.

Q:  So, is it the Board's position that that
language would prevent you from directing Ms.
Aliff to form a committee to modify the sixth
grade class to be something that can be
taught in fifth grade?

A:  Yes.

Q:  This - - this - -

A:  We could not do that.  She could not do that.
I would not do that.

Q:  Right.  Based upon this resolution?

A:  Yes.

Q:  And is there anything preventing the Board
from adopting a resolution that would allow
you to do exactly what we just talked about?
Tell Ms. Aliff to adapt Bible [and] Its
Influence for fifth grade?

A:  Well, they've adopted this that they are not
going to do it now or ever I think it says in
there.  Never.

Q:  Right.  So is it the Board's position that
that would prevent the Board - - that
language would prevent any future board from
ever taking different action?

* * *

A:  Their position as a board is they will never
offer that.

Q:    So does that refer to the currently
          constructed board or all future boards?

    A:    Well, they're sending that message through
          this resolution to future boards.

    Q:    Right.  But future boards would be free to
          adopt a resolution taking a different
          position, correct?

    A:    Future boards can act, but I think in a
          resolution they're going to look at what has
          been adopted by previous boards.

Akers Depo. at 64-67.

       Mr. Hodges testified that the resolution passed by a vote

of 3 to 2 and that he had voted in favor of it.  See Hodges Depo.

at 34-35.  Hodges conceded that he was unaware of anything

preventing the Board "from adopting a resolution that would turn

the" resolution terminating BITS "on its head".  Id. at 44-45.

He maintained, however, there was no plan or desire to do so.

See id. at 44 ("I'm not aware of any law or anything that keeps

us from doing it, but it will not happen.  I mean, we're

intelligent people.  It will not happen.").

## II.  DISCUSSION

       Article III, § 2, of the Constitution confines federal

courts to the decision of 'Cases' or 'Controversies.'"  Arizonans

for Official English v. Arizona, 520 U.S. 43, 64 (1997).  As the

Court put it:

>To be cognizable in a federal court, a suit must
>be definite and concrete, touching the legal
>relations of parties having adverse legal
>interests. . . .  It must be a real and
>substantial controversy admitting of specific
>relief through a decree of a conclusive character,
>as distinguished from an opinion advising what the
>law would be upon a hypothetical state of facts. .
>. .  However, moot questions require no answer. .
>. .  Mootness is a jurisdictional question
>because the Court is not empowered to decide moot
>questions or abstract propositions, . . . our
>impotence to review moot cases derives from the
>requirement of Article III of the Constitution
>under which the exercise of judicial power depends
>on the existence of a case or controversy.

North Carolina v. Rice, 404 U.S. 244, 246 (1971) (internal

citations and quotations omitted); see also Lewis v. Continental

Bank Corp., 494 U.S. 472, 477 (1990) ("Under Article III of the

Constitution, federal courts may adjudicate only actual, ongoing

cases or controversies.").

"This case-or-controversy requirement subsists through

all stages of federal judicial proceedings, trial and appellate.

To sustain our jurisdiction . . ., it is not enough that a

dispute was very much alive when suit was filed. . . ."  Id.

"The parties must continue to have a personal stake in the

outcome of the lawsuit."  Id. at 478.  "If an intervening

circumstance deprives the plaintiff of a 'personal stake in the

outcome of the lawsuit,' at any point during litigation, the

action can no longer proceed and must be dismissed as moot."

Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 73 (2013)
(quoting Lewis, 494 U.S. at 477–478); Norfolk S. Ry Co. v. City
of Alexandria, 608 F.3d 150, 161 (4th Cir. 2010) ("We are always
obliged to assure ourselves that a live dispute exists between
the parties at all stages of litigation.").

"When a case or controversy ceases to exist—either due to
a change in the facts or the law—'the litigation is moot, and the
court's subject matter jurisdiction ceases to exist also.'"
Porter v. Clarke, 852 F.3d 358, 363 (4th Cir. 2017) (quoting S.C.
Coastal Conservation League v. U.S. Army Corps. of Eng'rs, 789
F.3d 475, 482 (4th Cir. 2015)). "A case can become moot due
either to a change in the facts or a change in the law." S.C.
Coastal, 789 F.3d at 482 (citing Ross v. Reed, 719 F.2d 689,
693–94 (4th Cir. 1983)). A district court's mootness
determination is reviewed  de novo and "a district court's
jurisdictional findings of fact on any issues that are not
intertwined with the facts central to the merits of the
plaintiff's claims [are reviewed] under the clearly erroneous
standard of review. . . ." Id. (quoting U.S. ex rel. Vuyyuru v.
Jadhav, 555 F.3d 337, 348 (4th Cir. 2009)).

There are, however, exceptions to the mootness doctrine.
One of these, commonly referred to as the voluntary cessation

exception, holds that "'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" Porter, 852 F.3d at 363 (quoting City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982)).

> The voluntary cessation exception "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." Id. at 364 (quoting City News & Novelty, Inc. v. City of Waukesha, 531 U.S. 278, 284 n.1 (2001)). Accordingly, the exception seeks to prevent "a manipulative litigant immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and then reinstating it immediately after." ACLU of Mass. v. U.S. Conference of Catholic Bishops, 705 F.3d 44, 54-55 (1nst Cir. 2013). . . . To that end, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." [Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 190 (2000)].

Id. at 364.

Of that heavy burden, the United States Court of Appeals for the Fourth Circuit has already observed in this case:

> When a defendant voluntarily ceases a challenged program, however, the analysis requires additional rigor. In such a case, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." Laidlaw, 528 U.S. at 189. . . . Rather, a party asserting mootness bears a "heavy

17

> burden of persuading" the court that "subsequent
> events [make] it absolutely clear that the
> allegedly wrongful behavior could not reasonably
> be expected to recur."  Id.

Deal v. Mercer County Bd. of Educ., 911 F.3d 183, 191 (4th Cir.

2018); see also Grutzmacher v. Howard County, 851 F.3d 332, 349

(4th Cir. 2017) ("It is well established that a defendant's

voluntary cessation of a challenged practice moots an action only

if subsequent events made it absolutely clear that the allegedly

wrongful behavior could not reasonably be expected to recur.")

(internal citations and quotations omitted).

     In this case, defendants have met their burden.  It is

undisputed that on January 3, 2019, the Board approved a

resolution to terminate the BITS program and never reinstate it

in any of its schools.  In the resolution, the Board further

stated that it "does not now or in the future intend to offer a

Bible elective curriculum in any of its elementary schools" or

"now or in the future employ teachers for the purpose of teaching

a Bible elective curriculum in any of its elementary schools."

ECF No. 79-1.  In his affidavit dated April 10, 2019, Paul

Hodges, President of the Board, confirmed that "[n]o teachers are

assigned to the BITS program.  The contract for any teacher

previously employed as a part of the BITS program has either not

been renewed, or renewed under new assignment within Mercer

County Schools."  ECF No. 79-1 (Hodges Affidavit at ¶ 1).

At his deposition on September 25, 2019, Mr. Hodges confirmed that he had voted in favor of the resolution to terminate the BITS program and that there would be no effort to reinstate the program.  See Hodges Depo. at 44.  Dr. Akers confirmed that, not only was the BITS program terminated, that a Bible elective would never be taught in the elementary schools. See Akers Depo. at 64-65 ("[W]e're not going to be teaching a Bible elective in the elementary schools.  Period. . . . [W]e're not going to be offering that or any version of that in the elementary schools. . . .  We're not going to offer Bible in the elementary schools.  Period.").  Under repeated questioning, Dr. Akers continued to maintain the Board's resolution would prevent Mercer County Schools from offering not only BITS, but any other Bible curriculum, in its elementary schools.  See Akers Depo. at 65-67.  It is clear from reading the depositions of both Mr. Hodges and Dr. Akers that the BITS program is gone and is not coming back.

In Grutzmacher, the court concluded that the defendants in that case had met their "heavy burden of persuad[ing]" the court "that they will not revert to the challenged policies" and that dismissal for mootness was proper.  Id.  In so doing, the

Fourth Circuit looked at the record and could "discern 'no hint'" that the defendants "ha[d] any intention in reinstating the prior policies." Id. Therefore, based on the "formal assurances" of defendants "and the absence of any evidence to the contrary," the court affirmed the district court's mootness finding. Id. In this case, as in Grutzmacher, there is "no hint" that defendants have any intention of reinstating BITS. Dr. Akers' statement(s) to the press, in April of 2017, that defendants were "fighting" the lawsuit and the like do not suggest otherwise. Those statements were made early in the lawsuit and almost two years prior to the resolution terminating BITS.

This case is distinguishable from the cases in which our appeals court has found the voluntary cessation exception should apply. For example, in Town of Nags Head v. Toloczko, 728 F.3d 391, 394 n.3 (4th Cir. 2013), the court found that, given the Town Manager's statements that he "could . . . still declare—redeclare [the property owners'] cottage to be a nuisance" after giving them a chance procure new permits to repair the cottage, the action was not moot. The court found that the Town Manager's statements made it likely the property owners would "'be subject to the same action again.'" Id. (quoting Spencer v. Kemna, 523 U.S. 1, 17 (1998)). In this case,

rather than asserting their right to reinstate the BITS program, defendants have made clear that they feel that they are bound by the resolution to terminate it and never reinstate it. There is not even a "hint" that defendants are likely to repeat the allegedly illegal conduct.

In Stone v. Trump, 400 F. Supp.2d 317, 336-37 (D. Md. 2019), plaintiffs challenged the Trump administration's plan to restrict transgender military service as laid out in an August 2017 Memorandum. The district court found that plaintiffs' claims were moot because President Trump revoked his August 2017 Memorandum and that the voluntary cessation exception to the mootness doctrine did not apply. See id. In addressing plaintiffs' argument that defendants had not met their heavy burden of showing the exception should not apply, the court noted:

> Plaintiffs also contend that Defendants have failed to carry their burden because they have not made it "absolutely clear" that President Trump will not reissue the Ban. While President Trump retains the power to reinstitute the Ban, he has not "openly announce[d]" his intention to do so.

Id. at 337. In this case, as in Stone, there has been no announcement that defendants seek to bring back BITS. Indeed, the evidence is to the contrary.

Plaintiffs make much of the fact that the mechanism used to accomplish termination of BITS was a Board resolution rather than a Board policy.  However, both Mr. Hodges and Dr. Akers testified that they considered the resolution to be binding on this Board and future boards.  Of the difference between a resolution and policy, Mr. Hodges explained that his "understanding would be a resolution would be a more specific situation that you're just making a statement on[,] that policy would be more long ranging."  Hodges Depo. at 8.  And, as Dr. Akers confirmed, there were no Board policies that dealt specifically with BITS.  See Akers Depo. at 23.  Therefore, there was no policy in place that required amendment to terminate BITS.  As Dr. Akers explained one of the differences between the two, "[t]he discussion on resolution as opposed to policy, the policy is a document that can be changed.  A resolution is this is how it is."  Id. at 68.

Furthermore, despite plaintiffs' argument that the adoption of Board Memo #171 was improper because it was done in secret at a work session, Mr. Hodges confirmed that the vote was taken in public session.  See Hodges Depo. at 31 ("It could not have been taken at a work session.  It must have been an open meeting after the session or some such.").

Q:     And you would agree with me that board action isn't typically taken in work sessions. I think you said that a couple of times.

A:     Yes.

Q:     So is there a process by which you've been involved in a work session being converted to a public meeting at which a vote can take place?

A:     As far as I know, any meeting we've had with the legislature is a public meeting. Nobody else comes, but it is a public meeting, so I would assume it's just part of that process.

Q:     And this resolution it doesn't appear that based upon the minutes that there was any executive session at this work session.

       Do you recall that this - - the vote on this Board Memo No. 171 took place outside of executive session?

A:     Yes.

Id. at 33. Dr. Akers testified that there was nothing unusual about either the agenda or the press release that was prepared for that meeting on January 3, 2019. See Akers Depo. at 53, 78. According to Dr. Akers, a combined work session and special meeting took place. See id. at 56-57.

Regarding the timing of the Board's decision to terminate the BITS program, the court has no doubt that it "was motivated, at least in part, by a desire to rid itself of this litigation." Keohane v Florida Dep't of Corr. Sec'y, — F.3d —, 2020 WL

1160905, *6 (11th Cir. Mar. 11, 2020). However, as the <u>Keohane</u> court counseled, that fact should not be overemphasized. <u>See</u> <u>id.</u> The fact that a defendant may realize and correct a "mistake a little late in the game in no way suggest that it would revert back to its old ways absent [an] injunction." <u>Id.</u> at 7. "Wisdom too often never comes, and so one ought not to reject it merely because it comes late." <u>Id.</u> (quoting <u>Henslee v. Union Planters Nat. Bank & Trust Co.</u>, 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting)).

Finally, in arguing that this case is not moot even though the BITS program has been terminated, plaintiffs make much of the fact that Mercer County Schools offer an elective class in its middle and high schools based upon a textbook called <u>The Bible and Its Influence</u>. However, as the appeals court has made clear, plaintiffs "challenge only the BITS program as it existed at the time the suit was filed. To be sure, any challenge brought now to a future version of BITS would face ripeness concerns. This is so because the Establishment Clause requires us to undertake a fact-intensive inquiry that may prove impossible until the precise contours of a redesigned Bible instruction course are known." <u>Deal</u>, 911 F.3d at 191. Therefore, any problems that plaintiffs may have with courses

based upon <u>The Bible and Its Influence</u> are not properly before this court.

In summary, plaintiffs are challenging a program that has not been taught in Mercer County Schools for almost three years. There is nothing in the record to suggest that defendants are gaming the system to obtain a dismissal of this lawsuit and then, having done so, reinstate BITS.  Accordingly, they have met their heavy burden of showing plaintiffs' claim for injunctive relief is moot.

### III.  CONCLUSION

Based on the foregoing, the court **GRANTS** defendants' Motion to Dismiss the Amended Complaint insofar as it seeks injunctive relief.[2]  The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record.

IT IS SO ORDERED this 31st day of March, 2020.

ENTER:

David A. Faber
Senior United States District Judge

---

[2] In their filings, plaintiffs did not address defendants' argument that plaintiff's claims for nominal damages cannot save this action from mootness.  If plaintiffs wish to respond to this argument, they should file a brief addressing this argument no later than April 8, 2020.